# NEW YORK MINING COMPANY *vs.* THE MIDLAND MINING COMPANY.

*Eminent Domain—No Appeal From Action of Circuit Court Confirming or Rejecting Inquisition of Jury When the Questions Decided Are Within Its Jurisdiction—Condemnation of Land by a Mining Company for a Connecting Railway—Public Use—Qualification of Juors— Waiver of Objection.*

When proceedings to condemn land for a public use are taken under Code, Art. 23, the inquisition of the jury is returned to the Circuit Court where objections thereto are heard. No appeal is provided by statute from the judgment of that Court confirming or rejecting the inquisition, and consequently, whether that judgment be right or wrong, it cannot be reviewed in the Court of Appeals in any case where the lower Court had jurisdiction to determine the questions raised upon the return of the inquisition.

The M. Mining Company built a tramway from its mine to a tipple near the tracks of a railway company, but in order to connect with the railway it was necessary to construct a switch or siding on land owned by the N. Y. Company lying between the railway and the property of the M. Company The M. Company instituted proceedings to condemn this land under Code, Art. 23, scc. 149, empowering mining companies to condemn land for the construction of a connecting railroad. The inquisition of the jury of condemnation was returned to the Circuit Court where certain objections of the N. Y. Co., were overruled and the inquisition confirmed. The latter company then sued out a writ of error to have the judgment reviewed in this Court alleging that the Circuit Court exceeded its jurisdiction in certain particulars. *Held,*

1st. That the objection that there was no necessity for the occupancy and consequently for the condemnation of the land in question, because the M. Co. by using a different route could reach the tracks of the railway company without crossing the N. Y. Co.'s land, was a matter within the jurisdiction of the Circuit Court to determine, since the non-existence of a necessity for the acquisition of the land sought to be condemned is a conclusive reason for refusing to confirm the inquisition.

2nd. That the objection that the siding to be constructed is not such a railroad as is authorized to be made by a mining company under Code, Art. 23, because it will be a mere switch to be operated by the railway company for the M. Co., and will be of no public use, was also a matter within the jurisdiction of the Circuit Court to decide, and if wrongly decided the decision cannot be reviewed in this Court. Further,

that the proceedings disclose that the land was condemned for a purpose authorized by the Code and was for a public use, and a mining company is empowered to construct a railroad without becoming the owner of the rolling stock with which to operate it.

Code, Art. 23, sec. 167, provides in respect of condemnation by railway companies that upon application to a Justice of the Peace, the latter shall issue his warrant to the sheriff of the county where the land lies, requiring him to summon a jury of twenty of the inhabitants of the county above the age of 21 years and qualified to act as jurors under the laws of this State, not related to the parties, etc. Section 243 of the said Article, relating to condemnations by mining companies, provides that upon application to the Judge of the Circuit Court he shall issue his warrant to the sheriff requiring him to summon a jury of twenty inhabitants not related to the parties, etc. In this case the warrant to the sheriff to condemn land for the construction of a connecting road by a mining company directed him to summon a jury of twenty inhabitants above the age of 21 years and qualified to act as jurors under the laws of the State. The landowner attended on the premises when the jury assembled and struck off four names from the panel, *Held*, that assuming—although there is no evidence thereof—that the sheriff, on account of the language of the warrant, summoned only jurors above 25 years of age, such being qualified under the laws of the State, and that under section 243 the sheriff was at liberty to summon a jury composed of men over 21 and under 25 years of age, yet the remedy of a party to the proceeding therefor was by a challenge to the array, before the jurors were sworn, and if such challenge had not been heeded then by exceptions to the ratification of the inquisition on that ground; that if the sheriff did summon individuals as jurors who ought not to have been summoned the participation of the landowner in the impanelling of the jury was a waiver of any irregularity in its constitution, and there was no jurisdictional defect in the proceedings.

Writ of error to the Circuit Court for Allegany County.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE and SCHMUCKER, JJ.

*John Prentiss Poe* and *Wm. H. Dawson* (with whom was *Robt. H. Gordon* on the brief ), for the plaintiff in error.

*Benjamin A. Richmond* and *F. C. Hendrickson*, for the defendant in error.

McSHERRY, C. J., delivered the opinion of the Court.
The record now before us has been brought into this Court

on petition as upon writ of error to the Circuit Court for Allegany County for the purpose of assailing the validity of a judgment which finally ratified and confirmed the inquisition of a jury of condemnation.   The appellee, a mining company, duly incorporated under the general corporation laws of the State, owns certain coal lands in Allegany County from which bituminous coal is mined.   The Cumberland and Pennsylvania Railroad is a common carrier whose road is near to, though not immediately adjoining, the lands of the Midland Mining Company.   The appellant, namely, The New York Mining Company, is also a coal mining corporation and owns land lying between the Cumberland and Pennsylvania Railroad tracks and the property of the appellee.   To enable the Midland Mining Company to get its coal to market it has a tramway constructed on its own land from the mouth of its mines to a tipple near the Cumberland and Pennsylvania tracks.   The coal is brought from the mines down the mountain upon this tramway to the tipple.   To get the coal which is thus brought to the tipple aboard the cars of the railroad for transshipment, it is necessary that a switch or siding connecting with the Cumberland and Pennsylvania Railroad should be constructed.   After the siding is built the empty coal cars will be brought from the main track of the railroad to the tipple on the appellee's property so that the coal may be loaded and so that when loaded it may be hauled to market.   In order to construct this siding, the Midland Company must acquire two small portions of land owned by the appellant Mining Company and lying between the railroad right of way and the appellee's property.   Being unable to agree with the appellant in regard to the occupancy of these small parcels for the purpose of constructing this siding, the appellee made application by petition, to the Circuit Court for Allegany County for a warrant directed to the sheriff commanding him to summon a jury to condemn the land needed for the construction of this siding.   It is alleged that the proceeding thus taken is authorized by secs. 145 and 149 of Art. 23 of the Code, and that the method and details to be pursued are marked out in secs.

248 to 253 of the same Article of the Code.   By section 145 any mining company such as the appellee is conceded to be is invested with full power to locate and construct a railroad, beginning at or near its mines and running to any convenient point or points that may best suit the convenience and interest of the corporation, and to use and control such railroad and the necessary vehicles and appurtenances belonging thereto; provided, as declared by section 153, such railroad does not exceed ten miles in length.   Section 149, expressly empowers mining companies to obtain the land required for such railroads by condemnation.   By section 248 it is enacted that condemnation proceedings for the acquisition of a right of way for such a railroad as a mining company is empowered to build must be commenced by filing a petition addressed to any Judge of the Circuit Court for the county in which the land wanted may lie; and it is further provided that upon its being made to appear satisfactorily to the Judge that the land needed is necessary and proper to be condemned for the use of such corporation, he shall thereupon issue his warrant directed to the sheriff requiring the latter to summon a jury to meet on the land to be valued and condemned on a day to be named in the warrant.   Such a petition was filed and in it the Court was asked to direct the sheriff to summon a jury of twenty inhabitants of Allegany County not related to either of the parties and not stockholders in the petitioning company or in the appellant corporation, and not in any wise interested in the land to be condemned, or in the controversy arising under the condemnation.   A warrant was thereupon issued by JUDGE WILLIAMS to the sheriff as prayed, but the Judge in the warrant signed by him directed the sheriff to summon a jury of twenty inhabitants of Allegany County "above the age of twenty-one years and qualified to act as jurors under the laws of this State," who were not related to either of the owners, that is, The New York Mining Company and The Midland Mining Company, the petitioner, and who were not in any wise interested in said lands and who were not stockholders in either of said corporations.   The sheriff accordingly sum-

moned a jury which met on the premises after due notice had
been given to the appellant company; and the jury after hav-
ing been empanelled and sworn, then and there proceeded to
value the damages the appellant would sustain by the use and
occupation of the land needed by the appellee company for
the construction of the siding heretofore mentioned.   The ap-
pellant attended by counsel on the premises when the jury
assembled and from a panel of twenty persons struck off four
names and the appellee company having also erased four
names, the remaining twelve constituted the jury of inquisi-
tion.   Upon the return of the inquisition by the sheriff to the
Circuit Court, the appellant company filed eight objections to
its ratification.   Testimony was taken and the objections were
heard by the Court below, and were overruled, and the inqui-
sition was finally ratified and confirmed.   Thereafter the ap-
pellant company filed its petition in the Circuit Court for
Allegany County alleging that there were errors in the action
of the Court in confirming the inquisition and praying that the
record be transmitted to this Court as upon writ of error so
that the rulings of the lower Court might be here reviewed.
Of the eight objections filed to the ratification of the inquisi-
tion five are relied on in the petition for a writ of error, whilst
the other three are not alluded to.  Of the five which are assigned ·
as grounds of error, the second, third and sixth original objec-
tions aver in substance that there was no necessity for the con-
demnation of the appellant's property for the construction of
the siding, inasmuch as the appellee by adopting another and
different route could reach the Cumberland and Pennsylvania
Railroad without crossing the appellant's property.   The first,
second and fourth reasons assigned in the petition for a writ
of error are substantially the same as the second, third and
sixth objections filed against the confirmation of the inquisi-
tion.   The fourth objection to the confirmation of the inqui-
sition, which is the third reason assigned in the petition for
a writ of error is in effect, that the siding to be constructed is
not such a railroad as is authorized under the sections of the
Code heretofore alluded to, because in point of fact, it will be

when completed, a mere switch to be operated by the Cumberland and Pennsylvania Railroad for the Midland Mining Company, and will be of no public use or benefit whatever; consequently that the condemnation proceedings are an attempt to take the property of one corporation for the private use and benefit of another corporation without warrant of law. The eighth objection to the ratification of the inquisition, which is the fifth reason assigned in the petition for a writ of error, is in brief that the warrant directing the sheriff to summon a panel of twenty inhabitants of Allegany County from amongst whom the jury of inquisition was to be obtained, was not issued in conformity with the requirements of law, and that the appellant's rights as to the class of persons from whom the jury should have been selected were thereby abridged, to the detriment and injury of the appellant, and that in consequence all the proceedings taken and had under that warrant are *ultra vires* and void.

A motion has been made in this Court to quash the writ of error upon the ground that the judgment of the Court below is final and conclusive and being pronounced upon a subject-matter exclusively within the jurisdiction of that tribunal and no appeal or writ of error having been provided by law, there can be no review by this Court of the action of the lower Court.

It is conceded by the appellant that no appeal lies to this Court from the order of the Court below ratifying the inquisition because none is provided by statute, *Swann* v. *M. & C. C. Cumb.*, 8 Gill, 150; but it is insisted that the objections which were interposed to the ratification of the inquisition and which were overruled, present jurisdictional questions and that such questions when brought up on a writ of error are open for consideration by this Court. *Margraff* v. *Cunningham*, 57 Md. 585.

It is obvious, therefore, that the fundamental inquiry is whether the questions as to the existence of a necessity for the condemnation of the particular land sought to be acquired; and as to whether the switch or siding proposed to be con-

structed is a railroad within the meaning of the sections of the Code empowering the Mining Company to condemn land for the construction of a railroad ; and as to whether the warrant to the sheriff was in conformity with the requirements of the Code, are questions which the Court below had the right and was clothed with jurisdiction to pass upon.   Whatever subject-matter involved in the controversy, the Court below had the right to decide was necessarily a subject-matter within the jurisdiction of that tribunal.   Accordingly the inquiry here is, not whether the trial Court rightly decided but whether it had the right to decide, what it did decide.   If it had the right to decide what it did decide then, though its decision be, in point of fact or of law, erroneous it cannot be reviewed, because the statute has conferred no power upon this Court to sit in review of such a judgment.   So the ultimate question is, were the things complained of and decided below, things which the Court had jurisdiction to decide?

It was said by this Court in *Hopkins* v. *P. W. & B. Railroad Co.*, 94 Md. 263, that the only ground upon which an appeal in a case similar to the one at bar can be maintained is that the condemning company had no right *at all* to make the condemnation complained of, and for that reason, the Circuit Court would be without jurisdiction to confirm the inquisition of the condemnation jury.   And in *Moores* v. *Belair Water & Light Co.*, 79 Md. 391, many of the adjudged cases beginning with *Wilmington and Sus. R. R.* v. *Condon*, 8 G. & J. 443, and coming down to *Greenland* v. *County Commissioners*, 68 Md. 59, and *Francis* v. *Weaver*, 76 Md. 457, were reviewed and the same conclusion was announced that was subsequently restated in *Hopkins'* case in 94 Md.   It is the settled law of this State, therefore, that in proceedings of this character this Court has no authority to review the judgment of the lower Court, whether that judgment be right or wrong, if it be pronounced upon a subject-matter within the limits of its jurisdiction.   It would be supererogatory to cite the cases any more extensively.

It is too plain for discussion that the three objections relat-

ing to the question as to the necessity for the occupancy, and, therefore, for the condemnation of the land sought to be taken, were clearly within the jurisdiction of the lower Court. There could be no more conclusive reason for refusing to confirm the inquisition than the non-existence of a necessity for an acquisition of the land sought to be condemned. Whether such a necessity did in point of fact exist, was obviously a question for the Court below to determine upon the objections filed, before the inquisition could be confirmed. It did determine that question and being a question within the scope of its jurisdiction, and no appeal from that determination being provided by law, the conclusion reached is necessarily final and not open for review. Indeed in the brief of the appellant and in the oral argument no allusion was made to these three objections and we need not further pursue an investigation of them.

The fourth exception is the one which avers that the rail road designed to be constructed is not such as the statute contemplates. This, if true, like the other objections which have just been considered would furnish a complete bar to a ratification of the inquisition by the Court below, and it was therefore a subject rightly before the Court for its decision, and being rightly before the Court for decision was within its jurisdiction to decide. If wrongfully decided the mere fact that the Court below fell into an error in so deciding, furnishes no reason for reviewing that determination here, inasmuch as the lower Court is clothed by the statute with exclusive jurisdiction to pass upon that subject. As said by this Court in *B. & H. Turnpike Co.* v. *N. C. R. R. Co.*, 15 Md. 198, we could not review a judgment confirming the inquisition without interfering with the exclusive jurisdiction of the Court confirming it. But apart from this technical view the proceedings for condemnation on their face disclose that the railroad which was to be constructed on the land condemned was a railroad of the kind authorized by the sections of the Code to which reference has heretofore been made. It is a road beginning near t e mines of the appellee and running to a convenient

point on the Cumberland and Pennsylvania Railroad which best suits the interest and convenience of the appellee company. The fact that it is to connect at both its *termini* with the Cumberland and Pennsylvania Railroad does not make it any the less the Mining Company's railroad than if it were to connect at but one terminus. When constructed it may, under sec. 150, have other railroads connected with it, but the right of way is not condemned for use by other companies. Whilst it may have no motive power or cars of its own it is, by sec. 154, required to be furnished with the necessary means for the transportation of all persons and property that may be offered for transportation thereon; and this can be accomplished by traffic arrangements with the Cumberland and Pennsylvania Railroad as effectually as though the appellee company possessed engines and cars itself. Sec. 154, does not mean that no mining company can construct a railroad unless it acquires, as owner, rolling stock with which to operate it.

The railroad of the appellee company is intended for a public as contra-distinguished from a private use. When constructed, any other railroad or mining companies will, as we have just said, have the right to connect with it, to run their cars over it, and to use it in the method prescribed by the statute. Its primary purpose is to enable the appellee to get its coal into the market and under the decision of this Court in *New Central Coal Co.* v. *George's Creek C. & I. Co.*, 37 Md. 561, such a use, under the circumstances here presented, is a public use. In the case just referred to authority to condemn was given by a charter to a mining company, and when an attempt was made to exercise that right it was shown that the road intended to be built was only a coal road not adapted to use for passenger travel or freight traffic and not intended to be used by the public in any way. The question presented there was whether such a use of the right of way sought to be condemned was a public use and the Court in dealing with that inquiry said : "The primary object of the charter in this case, as in a great many others granted by the Legislature, was to enable the corporators to work the mineral lands of the

State, and to transport the produce of the mines to market. It has certainly been the settled policy of the State, for many years past, to stimulate enterprise and to encourage the combination of capital, for the purpose of developing the large mineral resources in the western portions of the State; as upon their full and successful development depend, in a great measure, the success of the works of internal improvement upon which the State has expended many millions of money.    As means of wealth and revenue, therefore, the State has a material interest in the operations of the coal and other mineral lands in that section; and the statute book, within the period of the last thirty or forty years, will abundantly attest the policy of the State upon the subject, by the great number of liberal charters granted, all having for their object the same general purpose as the charter before us.    Indeed, among the first of these charters (Act of 1835, ch. 328), was one to the appellees containing provisions and powers in nearly all respects similar to that granted to the appellants.    It was under that charter that the railroad was made with which the appellants propose to connect their road ; and it is by an express condition in that charter that the right is reserved to the citizens, or other incorporated companies, to make such connection.    In all the mining charters granted, as also in the general law providing for the formation of mining corporations, power is given to construct railroads, coupled with the power to obtain the right of way by condemnation.    Indeed, without such right, and a general ramification of railroads through the coal fields, many of the most valuable mines could be but very partially and imperfectly worked, and much of the coal could never be got to market.    Without the facility of transportation from the mines by railroads, there would be little or no inducement to the investment of capital, and but small progress could be made in developing the vast mineral wealth of the State, in which the public at large are interested.    To furnish the requisite facilities for the construction of railroads for the successful operation of the mines is, therefore, in some sense, a public necessity, and that being so, the use of the ways for

such roads may well be said to be public, and therefore the right of condemnation exists.    That the right should be placed in the hands and under the control of a private corporation, detracts nothing from the public nature of the use. For, as was very correctly said by the Supreme Court of Pennsylvania, in *Hays* v. *Risher*, 32 Penn. St. 169, that an individual expects to gain by the use of the way, and has private motives for risking the whole of the necessary investment, and acquires peculiar rights in the work, detracts nothing from the public aspect of it.    The same can be said of every railway corporation, and of almost every public enterprise.

"Nor is there any want of authority for the proposition that such use as here proposed is of a public nature, and therefore within the right of eminent domain, as authorized to be exercised by the Constitution.    In Pennsylvania, where the constitutional provision on the subject is very similar to our own, the right to take by compulsory process, land for the construction of lateral railways to coal mines, has been very fully sustained, as being for public use, and therefore within the power of eminent domain; and the case in *32 Penn. St. 169*, just referred to, is direct and full to this proposition.

"And in the case of *Bankhead* v. *Brown*, 25 Iowa Rep. 540, cited and relied on by the appellee's counsel, the power of the Legislature to authorize the taking by compulsory process, the right of way to coal or other mines, as being for public use, is fully conceded by the Court."

We now come to the last error assigned, namely, that with regard to the qualification of the jurors.    It is insisted that the whole proceeding is wrong and that the Court was deprived of jurisdiction to ratify the inquisition because of a departure in the warrant to the sheriff from the requirements of sec. 248 of Art. 23 of the Code.    Under sec. 167 of Art. 23, as amended by the Act of 1896, ch. 151, it is provided in respect of condemnations by railroad companies, that upon application to a Justice of the Peace, the latter shall issue his warrant to the sheriff of the county where the land lies requiring him to summon a jury of twenty of the inhabitants of such

county *above the age of twenty-one years and qualified to act as jurors under the laws of this State*, not related to the party nor in any wise interested; whereas, under sec. 248 of the same Article of the Code, relating to condemnations by mining companies and other similar corporations, it is provided that upon application to the Judge of the Circuit Court, he shall issue his warrant to the sheriff requiring the latter to summon a jury of twenty inhabitants of the county, not related to the owner of the land or in any wise interested in the land and not stockholders in said corporation.    It will be seen, that the Judge in issuing his warrant in this case incorporated in it the provision that the jurors should be above the age of twenty-one years and qualified to act as jurors under the laws of this State.    Every qualification prescribed by sec. 248 is contained in the warrant of the Judge, but because he superadded that with regard to age and the further direction that the persons summoned should be qualified to act as jurors under the laws of the State, it is insisted that the whole proceeding is defective.    It is not pretended, and was not even suggested in the Court below, so far as we can discover, and it was not intimated here, that any one of the twenty jurors actually summoned was in point of fact disqualified; and the record does not show that the superaddition of the qualifications contained in sec. 167 deprived the appellant of any right, or imposed any hardship whatever upon it.    If it be assumed that because of the direction to the sheriff to summon persons who were qualified to act as jurors under the laws of this State, that officer was required to summon no one under twenty-five years of age—that being the earliest age at which a person is qualified to serve as a juror in the Courts—and if it be further assumed that under the provisions of sec. 248 the sheriff was at liberty to summon a jury composed of individuals over twenty-one, but under twenty-five years of age and that he did not summon such last-named persons, and that that class was excluded by him because of the direction contained in the warrant; still the remedy of the appellant was by a challenge to the array before the jurors were sworn, and if such challenge

had not been heeded, then by exceptions to the ratification of
the inquisition, founded on that specific ground.    If, in point
of fact, the sheriff summoned individuals as jurors who ought
not to have been summoned, the presence of the appellant and
its participation in the impanelling of the jury by striking off four
names and by entering no challenge, was a clear waiver of any
irregularity in the summoning and impannelling of the jury.
Obviously, there was no jurisdictional defect in the proceed-
ings.    In the case of *Moores* v. *Belair Water & Light Co.*,
*supra*, it was claimed that the return of the sheriff was insuffi-
cient because it did not appear therein that the jurors sum-
moned were not related to Moores and were not in any wise
interested in the subject of condemnation and were not stock-
holders in the corporation.    In disposing of that contention
this Court said : "The sheriff's return shows that John
Moores was present and struck off four jurors.    He had the
right to inquire into the fact as to whether any of the jurors
were interested as stockholders or in any other way and if the
sheriff had failed to perform his duty the Court below would
doubtless have protected the appellant if he had been in-
jured.    But it was not even suggested in the objections to the
ratification of the inquisition or in the argument in this Court
that any of the jurors were disqualified."    It does not appear
upon the face of the record, and has not been intimated in
argument, that any juror summoned or impanelled in these
proceedings was disqualified for any reason, and to say, in the
absence of such a specific averment, that the Court was with-
out jurisdiction to confirm the inquisition solely because dis-
qualified persons *might* have been summoned and not because
they *were* summoned, is to make jurisdiction depend, not upon
a state of facts actually existing, but upon an hypothesis which
has not even been suggested much less distinctly charged.    The
theory of the appellant is that by reason of the Judge having
joined together in the warrant the qualifications prescribed in
sec. 167, relating to railroads, and those in sec. 248, relating
to other corporations, some persons who would have been
qualified under sec. 248 to serve as jurors *might* not have been

summoned, because they would not have been competent to act under sec. 167.   Since this might have happened, notwithstanding it is not pretended that it *did* occur, the contention is that the Court was without jurisdiction to confirm the inquisition.   If it had been averred and shown that but for the mandate requiring him to summon persons qualified to act as jurors under the laws of the State, the sheriff would have summoned persons under twenty-five years of age and did not, perhaps a different situation would have been presented.   But it does not appear from the record whether the twenty inhabitants summoned were over twenty-five years of age or not.   For aught that we know from the proceedings before us the sheriff may have entirely disregarded the qualifications contained in sec. 167 and selected only persons possessing those prescribed by sec. 248.   It was, clearly within the trial Court's jurisdiction to determine upon proper objections whether the jurors were qualified or not; but no objection of that character was interposed.

As each and all of the exceptions to the ratification of the inquisition and the reasons assigned as grounds of error embrace and comprise matters which, in the last analysis, relate merely to the correctness of the Circuit Court's judgment, and in no way concern or affect its jurisdiction over the subject-matter and the parties then before it, and it is obvious, upon well settled principles, that neither an appeal nor a writ of error will lie to review the judgment complained of.   For the reasons we have given the writ of error must be quashed and it is accordingly so ordered.

*Writ of error quashed with costs above
and below.*

(Decided June 8th, 1904.)

FOWLER, J., dissents on the ruling on the fourth exception.