## WILLIAM A. ARNSPERGER *vs.* ANNIE M. CRAW-FORD ET AL.

*Appeal from Lower Court Acting in Exercise of a Special Jurisdiction —Property Cannot be Condemned for a Private Use—Unconstitutionality of Statute Authorizing Land to be Condemned for a Private Road.*

Where the Circuit Court sits as an appellate Court under statutory authority, no appeal will lie to this Court from the judgment of the Circuit Court, unless expressly given by statute.

No appeal lies to this Court from the action of the Circuit Court under Code, Art. 25, sec. 117, confirming an inquisition and award upon the condemnation of a private road; since the statute provides for no further appeal.

A law which authorizes the taking by condemnation of private property for a private use is unconstitutional under sec. 40 of Art. 3 of the Constitution, which provides that no law shall be enacted authorizing private property to be taken for public use without just compensation being first paid or tendered; and Art. 23 of the Declaration of Rights, which declares that no man shall be deprived of his property except by the law of the land.    These provisions must be construed to mean that private property can be taken only for a public use.

Whether the use for which a statute authorizes private property to be condemned is a public or a private use is a question for the judiciary and not for the Legislature.

A public use of property means, not a use that will be to the interest or to the advantage of the public, but a use of the property by the public.

Land cannot constitutionally be condemned for a private road for the use of particular individuals who may lawfully exclude therefrom the public.

Code, Art. 25, sec. 100, provides that any owner of lands has the right to a road to and from his land to places of public worship, market-towns, court-houses, &c., and may obtain a private road by application to the County Commissioners; that after the payment of damages assessed and the cost of laying out such road by the applicant for the same, such road shall be considered as the private way of such person, who shall keep open and repair it at his own expense, and that no person shall obstruct such private road under a prescribed penalty. *Held*, that the statute is unconstitutional because such a road is for a private and not for a public use.

Private roads heretofore established under the provisions of Code, Art. 25, sec. 100, &c., are not affected by a subsequent adjudication that this statute is unconstitutional, since the acceptance of the damages awarded in such cases is equivalent to a grant of a private way, and operates as an estoppel upon the party so accepting them.

The fact that an unconstitutional statute has been enforced without objection for a long time is no reason why it should not be declared invalid when the objection is made.

Appeal from the Circuit Court for Frederick County (MOT-TER, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Milton G. Urner* and *Hammond Urner* (with whom was *M. G. Urner, Jr.*, on the brief), for the appellant.

*William P. Maulsby* and *Jacob Rohrback*, for the appellees.

PEARCE, J., delivered the opinion of the Court.

The question sought to be raised by this appeal is the constitutionality of the private road law of Maryland. The proceedings were commenced by the filing of an application by the apppellant to the County Commissioners of Frederick

County, under the provisions of Art. 25, sec. 100 to 117 of the Code of Public General Laws, for a private road to run from a tract of land belonging to him in said county, and wholly bounded by the lands of other private owners, through the lands of the appellees, to the public road from Waynesboro to Sabillasville. The Commissioners appointed to lay out such road, located the same and assessed the damages to the appellees, and the County Commissioners, after consideration of objections urged by the appellees to the inquisition, ratified and confirmed the inquisition and award and by their order *granted* said private road to the appellant. From that order an appeal was taken by the present appellees to the Circuit Court for Frederick County, under sec. 117 of Art. 25, which gives such appeal and provides that the judgment in the case shall be final between the parties. Upon the trial of that appeal, the Circuit Court, upon the motion of the appellants therein, quashed the proceedings in the case, upon the ground that secs. 100 to 117 of Art. 25 are in conflict with the Constitution of Maryland, and void, and that the County Commissioners therefore had no jurisdiction to grant a private road, and the present appeal is taken from that order.

It is now moved to dismiss this appeal, and this motion must prevail. It is well settled in this State, that where the Circuit Court sits as an appellate Court under statutory authority, no appeal will lie to this Court from the judgment of the Circuit Court, unless expressly given by statute. In *Rayner* v. *State*, 52 Md. 368, it was insisted that the statute under which Rayner was convicted of violating a law restricting the right of fishery in the Potomac river, was unconstutional and void, and that there was therefore no jurisdiction, either of the Justice before whom the charge was first heard, or of the Circuit Court on appeal, to try and decide it. The Court there said that whatever might be thought of the constitutional objections to the statute, it did not follow that the right of appeal was not validly given, or that the Circuit Court was not in the exercise of valid jurisdiction in hearing and deciding the case, and pointed out that "if, instead of the appeal

under the statute, the party had applied for the writ of *certi-orari*, upon the specific ground of the unconstitutionality of the statute, and the consequent want of power and jurisdiction of the magistrate to proceed under it, the Circuit Court would then have been in the exercise, not of the special limited jurisdiction, but of its ordinary common law jurisdiction; and from its judgment in the premises, a writ of error, or an appeal, could have been prosecuted to this Court."

In *Judefind* v. *State*, 78 Md. 510, a member of the sect of Adventists, whose creed requires them to observe the seventh day of the week as a day of rest was convicted before a Justice of the Peace for a violation of the law prohibiting work on Sunday, and upon appeal to the Circuit Court the conviction was sustained, whereupon he brought a writ of error to this Court to test the constitutionality of the Sunday law, and the writ of error was quashed for the reason given in *Rayner* v. *State, supra.*

In *Moores* v. *Bel Air Water Co.*, 79 Md. 391, certain water rights of the appellant were condemned under the provisions of secs. 248 to 253 of Art. 23 of the Code, and the inquisition and award being ratified by the Circuit Court for Harford County, the case was brought to this Court by appeal and also on writ of error, to determine the constitutionality of the statute authorizing the condemnation. The Maryland cases were very carefully reviewed, and the Court being of the opinion that the Water Company had the right of eminent domain, and that the Circuit Court had jurisdiction over the condemnation proceedings, its order could not be reviewed, and the appeal was dismissed and the writ of error quashed.

To the same effect are the cases of *Hopkins* v. *P., W. & B. R. R.*, 94 Md. 257, and *N. Y. Mining Co.* v. *Midland Mining Co.*, 99 Md. 506, in both of which it was sought to review the action of the Circuit Court upon condemnation proceedings, providing for no appeal from such action, because of alleged constitutional objections to the statutes authorizing the condemnation.

In the last-mentioned case, the Court said, "The inquiry

here is, not whether the Court rightly decided, but whether it had the right to decide what it did decide." In view of these repeated decisions, it is clear that this appeal must be dismissed. If we were authorized to review the action of the Circuit Court in this case, we would affirm its order, and we deem it proper to state the reasons for our view, in order that there may be no diversity or confusion of ruling upon this question in the different judicial circuits of the State.

Section 40 of Art. 3 of the Constitution of Maryland provides "The General Assembly shall enact no law authorizing private property to be taken for public use, without just compensation, as agreed upon between parties, or awarded by a jury, being first paid or tendered, to the party entitled to such compensation;" and Art. 23 of the Declaration of Rights, declares, that "no man ought to be taken, or imprisoned, or *disseized of his freehold* liberties or privileges, or outlawed, or exiled or in any manner destroyed or deprived of his life, liberty, or property, but by the judgment of his peers, or by the law of the land." There is no prohibition in express terms against taking private property for private use, to be found either in our Constitution or Declaration of Rights, nor can it be justly held that any is needed, although such a prohibition is contained in the Constitutions of Alabama, Colorado, Georgia, Louisiana, and Missouri. The implied prohibition contained in sec. 40 of Art. 3, is too clear to be questioned. As was said in *Bloodgood* v. *Mohawk R. R.*, 18 Wendell, 59, in construing similar language, "these words must be construed as equivalent to a constitutional declaration that private property, without the consent of the owner shall be taken *only* for the public use, and then, only upon just compensation."

In *Taylor* v. *Porter*, 4 Hill, 147, JUDGE BRONSON, speaking for the Supreme Court of New York, preferred to rest the prohibition upon that section of the Constitution of New York, which forbid that "any freeman should be disseized of his freehold, but by lawful judgment of his peers, or by the law of the land, and that no person should be deprived of life, liberty or

property, without due process of law," and said that the words, "law of the land," and "due process of law," could not, and did not mean, "a statute passed for the purpose of working the wrong." But whatever may be thought of the true ground upon which the conclusion should be placed, JUDGE COOLEY says in his *Const. Lim.*, 6 ed., 651, "It is conceded on all hands that the Legislature has no power in any case, to take the property of one individual and pass it over to another, without reference to some use to which it is to be applied for the public benefit." And JUDGE ALVEY in *New Central Coal Co.* v. *Georges Creek Coal Co.*, 37 Md. 559, said, "This Constitutional prohibition is but declaratory of the previously existing universal law which forbids the arbitrary and compulsory appropriation of any man's property to the mere private use of another, even though compensation be tendered."

It has never been anywhere held that this can be done, so that our only inquiry here is whether this particular use is a "public use" within the meaning of the Constitution. When this is determined, the question before us is solved, and all the authorities hold that whether a use is public or private, is a question not for the Legislature, but for the judiciary. *Lewis on Eminent Domain*, sec. 158. *New Central Coal Co.* v. *Georges Creek Coal Co.*, 37 Md. 560. The Legislature cannot make a particular use, either public or private, merely by so declaring it. If it could do so, "the constitutional restraint would be utterly nugatory," as was said in the case last cited. The Constitution does not define the term, "public use," but leaves us to resort to the natural meaning of the words, and we think this meaning is clearly and correctly expressed by Mr. Lewis in sec. 165, in which he says, "*public use* means the same as *use by the public*," giving as his reasons for this conclusion the following: "First, that it accords with the primary and more commonly understood meaning of the words; second, it accords with the general practice in regard to taking private property for public use, in vogue when the

phrase was employed in the earlier constitutions; and third, it is the only view which gives these words any force as a limitation, or renders them capable of any definite and practical application." There will be found two different views of the meaning of these words which have been taken by the Courts; one, there must be a use, or right of use *by* the public, or some limited portion of the public; the other that they are equivalent to *public utility or advantage.* If the former is the correct view, the Legislature and the Courts have a definite, fixed guide for their action; if the latter is to prevail, the enactment of laws upon this subject will reflect the passing popular feeling, and their construction, will reflect the various temperaments of the Judges, who are thus left free to indulge their own views of public utility or advantage. We cannot hesitate to range this Court with those which hold the former to be the true view. We agree with the Pennsyvania Court (*Farmers Market Co.* v. *Phil. R. R. Co.*, 10 Pa. Co. Ct. 25) that "the test whether a use is public or not, is whether a public trust is imposed upon the property, whether the public has a legal right to the use, which cannot be gainsaid, or denied, or withdrawn at the pleasure of the owner." And we hold with the New York Court (*Matter of Niagara Falls*, 108 N. Y. 375), that "the expressions, *public interest, and public use,* are not synonymous; that the establishment of mills and manufacturies, the building of churches and hotels and other similar enterprises, are more or less matters of public concern, and promote, in a general sense, the public welfare. But they lie without the domain of public uses for which private ownership may be displaced by compulsory proceedings."

It was contended in argument, that in Maryland the latter of the two views above mentioned has been adopted, and in support of this contention, counsel cited the *Bellona Company's case*, 3 Bland, 457, and *Van Witsen* v. *Gutman*, 79 Md. 411. But we cannot agree with this contention. The former case was a bill for an injunction by the Bellona Company to restrain the Baltimore and Susquehanna R. R. Co. from condemning a right of way through the plaintiff's lands, and

upon hearing the preliminary injunction granted was dissolved. In that case, decided in 1831, there are, it is true, some expressions, which unexplained might give apparent color to the contention of the appellant in this case, but it must be remembered that railroads are common carriers, bound to serve the public in the transportation of passengers and freight over their right of way, upon payment, or tender of reasonable and proper charges, and that railroads are a public use. *Lewis on Eminent Domain*, sec. 170. And in the case cited, the Chancellor said, "The exercise of this power is not confined to those cases only, in which the private property taken, is to be applied *immediately, directly and exclusively to some public use*, as to the making of an open highway or the like; for, it is enough, if it clearly appears that the application of such private property to the proposed new use will be attended by a material public benefit which would not otherwise be so immediately and effectually produced. In all such cases the General Assembly may justly authorize a condemnation of private property for such a public benefit, *by such proceedings as are proposed to be prosecuted by these defendants*. It may in some cases, be difficult in this respect, to distinguish between a public and a private use, and to determine how far this exercise of the power of eminent domain may be carried. But in this case I deem it sufficiently clear that the construction of *a railroad*, as proposed by the defendants must result in such a general advantage to the people as to warrant the Court in pronouncing it such a *public use* as affords an ample justification of the proceeding by which the plaintiffs may be compelled to part with their land on receiving for it a just compensation." It will be seen from the above passage from the opinion in that case, that it, in expressed terms, was limited to the construction of a railroad, which is a *public agency*, and that the proposed use was *for that reason* declared to be a *public use*.

In the case of *Van Witsen* v. *Gutman*, 79 Md. 405, it was held that abutting owners have interests in alleys which cannot be taken for public use without just compensation, nor

for private use on any terms whatever, and without citing at length from that case, it is sufficient to note that it was there said, "But it is indispensable that the *use* for which private property is taken should be of a *public nature*." Reference may also be made to *Townsend, Grace & Co.* v. *Epstein*, 93 Md. 550, approving the language quoted from *Van Witsen* v. *Gutman, supra*. Railroads constructed by mining companies to connect with existing railroads, under the provision of Art. 23, sec. 145 to 156 of the Maryland Code, are no exceptions to the principle we invoke, since as observed by Mr. Lewis, sec. 171, "though constructed for the particular advantage of individuals, they are also open to the public as occasion requires." And in *New York Mining Company* v. *Midland Mining Co.*, 99 Md. 506, this Court said: "The railroad of the appellee company is intended for a public, as contradistinguished from a private use. Its primary purpose is to enable the appellee to get its coal into market, and under the decision in 37th Md. 561, such a use under the circumstances here presented, is a public use. When constructed, any other railroad, or mining companies, will have the right to connect with it, to run their cars over it and to use it in the method prescribed by the statute."

In every case therefore, the character of the use must be determined from the statute itself.

Sec. 100 of Art. 25 of the Code declares, that "any owner of any lands in this State has the right to a road and way to and from his land to places of public worship and mills, market-towns, public ferries and court-houses, and may obtain a private road or way by application to the County Commissioners."

This provision, with its accompanying machinery, had its origin in the Act of 1785, ch. 149, and is substantially unchanged as now codified. Section 104 enacts that "After the damages assessed, and the costs of laying out such road shall be paid by the person applying for the same, such road shall be considered as the private way of such person, who shall keep open and repair the same at his own expense;" and sec-

tion 105 provides that "no person shall stop or change, or in any manner obstruct such private road under the penalty of ten dollars for every such offence." The leading text writers all agree that private roads laid out under the exercise of the right of eminent domain, under statutes such as ours, cannot be justified.

JUDGE COOLEY in his *Constitutional Limitations*, p. 652, says, "It seems therefore not to be allowable to authorize private roads to be laid out across the lands of unwilling parties by an exercise of this right. The easement in such case would be the property of him for whom it was established. The public use implies a possession, occupation, and enjoyment of the land by the public at large, or by public agencies."

Mills, in his work on Eminent Domain, sec. 26, says, "Land cannot be condemned for the purpose of making a private road for the particular use of an individual though he may pay the entire cost of opening and maintaining it. The use is not public." *Lewis*, sec. 167, says, "When the road, after being laid out becomes the property of the applicant, from which he may lawfully exclude the public, the use is strictly private, and the law authorizing the condemnation of property therefor is void."

Elliott, in his work on Roads and Streets, sec. 11, 2 ed., says, "It must be free and common to all citizens, as long as any are excluded, it is not a public use."

It is true that there is a great diversity of ruling upon this question in the several States, a number of which, adopting the theory of public utility and advantage, without regard to the right of use by the public, have sustained statutes similar to our own, but after a careful examination of many of these decisions, we are convinced that the best considered cases are those which hold such statutes to be void.

Without attempting to review these cases, brief reference will be made to some of the leading decisions.

In *Taylor v. Porter*, 4 Hill, 140, already cited, a very able opinion was delivered by JUDGE BRONSON, the statute there in question being very similar to our own. The Court said,

"The road is paid for and owned by the applicant.    No citizen has the right to use the road as he does the public highway. He can only use it when he has business with the road owner, or some other lawful occasion for going to the land intended to be benefited by the road.    He can only justify an entry on the road when he could justify an entry on the land on account of which the road was laid out.    In short, the road is the private property of the applicant."

In *Bankhead* v. *Brown*, 25 Iowa, 540, CHIEF JUSTICE DILLON, considered a similar statute of that State, and held that roads established thereunder were "essentially private, that is, were the private property of the applicant therefor, because, *First.* The statute denominates them private roads.    If the roads established thereunder were not intended to be *private*, and different from ordinary and public roads, there was no necessity for the act.

*Second.* Such road may be established upon the petition of the applicant alone; and he must pay the cost and damages occasioned thereby.

*Third.* The public are not bound to work or keep such road in repair, and this is a very satisfactory test as to whether a road is public or private.

*Fourth.* We see no reason when such a road is established, why the person at whose instance this was done, might not fence it up or otherwise debar the public of any right thereto. Could he not abandon it at pleasure or relinquish it (to the owner of the fee) without consulting the board of supervisors? And if this is so, does it not incontestably establish that it is essentially private?"

In *Sadler* v. *Langham*, 34 Ala. 332, in considering a similar statute, the Court said, "The statute speaks alone of private roads.    They are to be opened and kept in repair at the expense of the applicant, and he alone is to make compensation to the owner of the land over which it passes, and there is nothing in the statute which authorizes public travel on such private roads.    We think it clearly appears these uses are simply private.    So far as the statute assumes to give au-

thority to lay out such roads over the lands of another without his consent it is unconstitutional."

Among other cases to the same effect which might be cited, are *Nesbit* v. *Trumbo*, 39 Ill. 110; *Dickey* v. *Tennison*, 27 Mo. 373; *Clack* v. *White*, 2 Swan (Tenn.) 540; *Varner* v. *Martin*, 21 W. Va. 534; *Wild* v. *Deig*, 43 Ind. 461; *Denham* v. *Co. Commrs.*, 108 Mass. 204. The case of *Bankhead* v. *Bronson*, *supra*, was cited with approval by JUDGE ALVEY in *New Central Coal Co.* v. *Georges Creek Coal Co.*, *supra*, p. 562. And in *Wright* v. *Freeman*, 5 H. & J. 477, there is an express approval of the fourth ground given by JUDGE DILLON for his conclusion, JUDGE DORSEY, saying "That a right of private way, whether acquired under the principles of the common law, *or the statutory provisions of the State*, can be extinguished by a release executed by the parties interested in the right of way to the owner of the soil, has not been denied."

We can discover nothing in the decision in that case that the penalty imposed by the Act for obstructing such private road, is for an offense against the State, which is at variance with the views herein expressed. The obstruction of the King's highway always constituted a public nuisance and was therefore indictable at common law. *Rex* v. *Cross*, 3 Camp. 234; *Rex* v. *Russell*, 6 East. 427; *P., W. & B. R. R.* v. *State*, 20 Md. 127. But the obstruction of a private road could not be regarded as a public nuisance, and if the offender were unable to respond in damages for the private injury resulting from the obstruction, the owner of the private road would be remediless. This consideration will amply account for the provision of a penalty to the State in such case.

It was urged in argument that this statute has been silently acquiesced in so long that it should not now be disturbed. This argument was urged in *Sadler* v. *Langham*, *supra*, but the Court replied, justly as we think, that it was never too late to re-establish constitutional rights the observance of which has been silently neglected; and we may add that it is the infringement of the constitutional rights of the few in minor matters, which leads to the disregard of the rights of the

body of the people in matters of graver import, and that no constitutional right can be so unimportant as to justify a Court in failing to enforce it, when its aid is invoked for that purpose.

It does not follow that private roads heretofore established under the provisions of our statute will be affected by these views; since acceptance of the damages awarded in such cases would seem to be equivalent to a grant of a private way, and to operate as an estoppel upon the party so accepting. As to future occasion for roads by persons situated as this applicant was relief can be found as suggested by JUDGE DILLON in *Bankhead* v. *Brown, supra*, in resort to the provisions of the statute for public roads.

If we were authorized to decide the constitutional question in this case we should hold the statute unconstitutional.

For the reasons first stated herein, the appeal will be dismissed.

> *Appeal dismissed with costs to the appellee above and below.*

(Decided June 20th, 1905.)