ROLF RUDOLPH VONOPPENFELD *v.* STATE OF
MARYLAND

[No. 581, September Term, 1982.]

*Decided January 7, 1983.*

The cause was argued before MOYLAN and LOWE, JJ., and FREDERICK A. THAYER, Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Alan J. Goldstein,* with whom were *Horowitz, Oneglia, Goldstein, Foran & Parker, P.A.* on the brief, for appellant.

*Ann E. Singleton, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Robert Greenberg, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Md. Transp. Code Ann. § 21-902 (a), (b) and (c) (1977, as amended July 1, 1980) prohibits driving while (a) intoxicated or (b) impaired by the use of alcohol or (c) under the influence of drugs or alcohol.

"(a) *Driving while intoxicated.* — A person may not drive or attempt to drive any vehicle while intoxicated.

(b) *Driving while ability impaired by alcohol.* — A person may not drive or attempt to drive any vehicle while his driving ability is impaired by the consumption of alcohol.

(c) *Driving while under influence of drugs or drugs and alcohol.* — (1) A person may not drive or

attempt to drive any vehicle while he is so far under
the influence of any drug, a combination of one or
more drugs, or any combination of drugs and
alcohol that he cannot drive a vehicle safely."

On October 10, 1981, Rolf Rudolph Vonoppenfeld was
convicted in Montgomery County's District Court of driving
while his ability was impaired by the consumption of
alcohol. § 21-902 (b). He is chagrined because, while
originally charged with "Driving a Motor Vehicle While
Intoxicated [§ 21-902 (a)] and/or Impaired by the
Consumption of Alcohol", the State amended, without
objection by the defense, on the morning of trial by striking
out the words "and/or Impaired by the Consumption of
Alcohol".

The record does not indicate why that amendment was
requested or permitted. We can only speculate whether the
State had elected to proceed on an "all or nothing" basis, as
was indicated in *Insley v. State,* 32 Md. App. 46, 48 (1976),[1]
or whether it was a procedural housecleaning amendment
merely to abolish surplusage in the light of Md. Transp.
Code Ann. § 26-405, which reads in pertinent part:

"If a person is charged with a violation of ...
§ 21-902 of this article ('Driving while intoxicated,
ability impaired, or under the influence'), the court
may find him guilty of any lesser included offense
under any section of the respective section."

The District Court judge then heard the case and,
according to appellant, found him not guilty of driving while
intoxicated but, presumably based upon the § 26-405
authority, guilty of driving while impaired.[2] No appeal was

---

1. Had the State intended to proceed on an "all or nothing" basis it is
reasonable to assume that it would have nol prossed the lesser offense of
right rather than asking the court for leave to amend. Because *Insley,
supra,* was decided on June 9, 1976, a year before the § 26-405 authority
was enacted in Ch. 14, § 2 of the Laws of Maryland, 1977, that assumption
was not readily available to us, nor was the State's intention questioned or
at issue in that case.

2. That is further evidence that the amendment was granted without
intending to permit abandonment of charges.

taken to the Circuit Court within 30 days as permitted by Md. Cts. and Jud. Proc. Code Ann. § 12-401. Four months later, however, on February 10th of the following year, appellant filed a petition in the Circuit Court for Montgomery County for a Writ of Certiorari directed to the District Court on the ground that the District Court had exceeded its jurisdiction by convicting appellant of an offense not charged. No pleadings in that regard, nor any record of the final judgment "appealed from" is before us since bringing that District Court record before the Circuit Court (from which this appeal emanates) is precisely what was denied by denying the writ.

Decisive in this appeal is the question whether the alleged defect by the District Court constituted a jurisdictional question sufficient to obviate the general rule that

> ". . . the writ [of certiorari] will not ordinarily be issued in any case in which by law an appeal is provided, for the plain reason that upon such appeal, the power and jurisdiction of the inferior court can always be easily and satisfactorily inquired into and ascertained." 4 Poe's *Pleading and Practice* (6th ed.) § 723, citing *Weed v. Lewis,* 80 Md. 126, 117-128 (1894); *Crichton v. State,* 115 Md. 423, 430 (1911); *State v. Haas,* 188 Md. 63, 67 (1947); *Moore v. License Com., Pr. Geo's Co.,* 203 Md. 502, 505 (1954);

see also *A. S. Abell Co. v. Sweeney,* 274 Md. 715, 719 (1975). We are also asked to decide whether the action of the District Court so exceeded its jurisdiction as to be a nullity. Because the term jurisdiction as used in both instances means "fundamental jurisdiction", *Pulley v. State,* 287 Md. 406, 415-416 (1980), which was properly acquired by the District Court, we will affirm.

—certiorari—

At common law *certiorari* is a writ issued by a superior court, directed to an inferior tribunal, commanding it to

return the record of its proceedings in a cause, to such superior court in order that inquiry may be duly made into the inferior court's authority or jurisdiction. See *Williamson v. Carnan,* 1 G. & J. 184, 196 (1829). While historically it was a familiar remedy used to restrain inferior courts from going beyond their limited powers, with the enlargement of the right of appeal the necessity for its use is now limited to those few cases where no appeal is provided. Poe, *supra,* § 723 at 440.

Ordinarily, where the writ will lie at all, it should be applied for and issued before the proceedings have culminated in a judgment, since the chief object of the writ is to stay the exercise of authority by an inferior tribunal until its jurisdiction can be determined. *Crichton v. State,* 115 Md. 423, 426 (1911). That preliminary purpose is not an absolute, however. A writ will limitedly lie after judgment, and "it may [even] issue *after judgment executed,* for the purpose of quashing the proceedings of an inferior jurisdiction which has transcended its limited authority," but again conditionally, "in cases where no writ of error or appeal will lie." 4 Poe, *supra* § 725.

Appellant takes exception to the current admonition that a writ of certiorari should be issued only where the lawfulness of the action of an inferior court could not be inquired into upon appeal to a superior court. See *A. S. Abell, supra.* Relying upon a phrase extracted from *Gaither v. Watkins,* 66 Md. 576, 580 (1887), he points to an exception parenthetically implied by that case *permitting* the writ to issue "for the purpose of testing the jurisdiction of the tribunal below". Acknowledging that the jurisdiction question could have been raised on appeal, *Gaither* justified the writ's issuance by pointing out that an appeal of a case like that before the *Gaither* trial court could have brought with it to the appellate court unrelated but expensive protracted legal questions. Certiorari, on the other hand, in that case, would more efficiently test *only* the jurisdiction since the jurisdictional question could be decided on the very face of that proceeding. *Id.* at 581.

It should be parenthetically noted that in *Gaither,* the Court was justifying the Circuit Court's granting of that

discretionary writ. There is not the slightest inference that a denial of the writ would have constituted an abuse. In light of the obsolescent need for that archaic remedy we find the absence of any case holding that a denial for any reason was an abuse, significant to signal a proportionate atrophying of the writ's availability with the growing rights of appeal and other similar more contemporary remedies.

The writ then, is not a writ of right but issues if at all as a discretionary exercise. A primary consideration of that determination by the petitioned court would be whether there exists another action — de novo or appellate, at law or in equity — which will provide the relief desired. *A. S. Abell Co., supra.* Had appellant been able to have foreseen the result here, and prematurely applied for certiorari prior to the culmination of proceedings, a denial of the writ, even then, would not have been an abuse because the question now asked (whether the charging document sufficiently described the offense convicted) was answerable on appeal. Notwithstanding appellant's professed inability to anticipate that issue before the case had culminated in a judgment, the same reasoning applies to his belated appeal. A remedy was available by appeal but was ignored, yet by virtue of the de novo nature of the appeal evidence, § 12-401 (d) Md. Cts. & Jud. Proc. Code Ann., it was the ideal place to determine that question appellant asks. The circuit court is the ideal reviewing court because it was an appeal de novo, capable of hearing the evidence necessary to determine whether the amendment was granted as a procedural housecleaning measure or an intentional abandonment of the lesser included offense.

But the right to appeal within 30 days was not taken and, now after even the 90 day revisory power of the court (M.D.R. 770 (c)) has expired (some four months after final judgment) appellant grasps at a certiorari lifeline to recover his lost advantage. That is what the trial judge found to be true, and we cannot disagree absent something in the record to indicate otherwise. This alone might have been sufficient for us to affirm his discretionary right to deny the writ. See *Gaither, supra* at 580.

In this case, not only did an appeal lie to test the jurisdictional question but, as suggested, the actual question when sifted of surplusage was not jurisdictional in the requisite sense. The issue is whether the charging document sufficiently described the offense intended to be charged and for which appellant was convicted. The Circuit Court judge pointed out and appellant agrees, that the District Court had jurisdiction over the subject matter expressly charged — drunk driving — as well as the person of the appellant whose degree of sobriety was the only difference of opinion. Appellant has conceded that much, yet that is what is meant by the "jurisdiction" which might have given rise to the privilege of a writ. The privilege is never available, when an appellate remedy is provided, for an alleged improper *exercise* of jurisdiction. It is the questionable power of a court to decide an issue, not whether the court did so improperly.

That message was clearly set forth in *Crichton, supra* at 429-430 where the issue was similar to that raised here; *i.e.,* whether the charging document properly charged an offense.

"We will next consider the third and fourth reasons given by the appellant, quoted above. It is contended that the warrants do not sufficiently describe the offenses intended to be charged, but if it be conceded that they are not very accurately charged, or even not technically correct, that would not necessarily deprive the justice of jurisdiction, so as to require the Court to grant a writ of *certiorari.* That is not a writ of right. In *Gaither v. Watkins,* 66 Md. 576, this Court, through Judge Robinson, said: 'Now, it was argued that a *certiorari* ought not to issue in any case where a party has a remedy by appeal or by writ of error. We are not prepared to go to this extent. This much, however, we may say, that as it is a matter resting in the legal discretion of the Court, the writ ought not to be granted in any case, where the party has a right of appeal, except for the purpose of testing the jurisdiction of the tribunal below.' And in that case, in which it was

claimed that the proceedings by the County Commissioners were not in accordance with the provisions of the law, after pointing out that the record did not sustain the objections which went to the jurisdiction of the commissioners, the Court said: 'The County Commissioners had then, in our opinion, jurisdiction in regard to the subject-matter, and having jurisdiction, subsequent irregularities in their proceedings, or irregularities on the part of the examiners, were matters to be taken advantage of by way of appeal to the Circuit Court. Such irregularities in no manner affected their jurisdiction over the subject-matter'. In *Weed v. Lewis,* 80 Md. 126; JUDGE McSHERRY, in speaking of a justice of the peace, said: 'If having jurisdiction of the subject-matter he subsequently proceeded irregularly or erroneously, this in no manner affected his jurisdiction and the appropriate and only remedy was by an appeal from his judgment to the Circuit Court, for which appeal the law makes ample provision', and concluded his opinion by saying 'as the writ of *certiorari* will only be issued where it is alleged and appears at least in a *prima facie* manner that the inferior tribunal is without jurisdiction, the Circuit Court was right in refusing the writ, and its order will be affirmed'. See also *Kane v. State,* [70 Md. 546 (1889)], *supra; Lancaster v. State,* [90 Md. 211 (1899)], *supra,* and *Baum v. Warden of Jail,* 110 Md. [579] 583 [(1909)]."

It is historically interesting that the evident judicial blurring of the definitional distinctions relating to the term "jurisdiction" only recently recognized, surfaced slightly not only in that 1911 case of *Crichton, supra,* but again even more pointedly in the same year, in *Hendrick v. State,* 115 Md. 552, 560 (1911). The Court there was also called upon to determine if the issue raised by petition for a writ of certiorari was "jurisdictional" in the sense that was intended by the *Gaither* "exception". Quoting Chief Judge McSherry in *N. Y. Mining Co. v. Midland Co.,* 99 Md. 506, 512 (1904),

Chief Judge Boyd noted the difference between the right of a court to decide a case and those cases in which the question is simply whether the case was rightly decided:

> " 'the inquiry here is, not whether the trial Court rightly decided but whether it had the right to decide what it did decide.' "

Chief Judge Boyd, picking up the McSherry alliteration, went on to say that:

> "If the lower Court had the right to decide what it did decide, then no question can be made in this Court on the ground of want of jurisdiction, and whether it rightly decided what it did decide can only be reviewed by this Court when the right of review is given it."

That is the problem in the case at bar. But appellant not only fails to recognize the distinction, he would have us determine the jurisdictional question that the writ is sought to investigate (*i.e.,* whether the District Court had jurisdiction, or more accurately phrased, whether it was improperly exercised) to determine whether the denial of that writ to investigate jurisdiction, was an abuse by the Circuit Court judge. Such sophistry would obviously make the writ a right, even if predicated upon a properly fundamental jurisdictional question, by granting a belated appeal to anyone, at any time, who challenges the jurisdiction of a lower tribunal. That is perhaps one reason for the old procedural rule that the writ should be applied for before the proceedings have culminated in a judgment. That procedural requirement has been supplemented by the contemporary prohibition on issuance of a writ where an appeal is available.

—jurisdiction—

By having addressed the jurisdictional definition for purposes of a writ of certiorari, we have implicitly answered appellant's alternative issue wherein he contends that

regardless of his "right" to issuance of the writ, the alleged error in the District Court is a "jurisdictional" defect which may be raised at any time; and, because he contends that the District Court lacked "jurisdiction", we should declare the conviction was a nullity. Our answer further clarifies the meaning of "jurisdiction" even for purposes of issuance of a writ of certiorari, since we find that the meaning intended for both purposes is the same.

Appellant cites primarily *Baker v. State,* 6 Md. App. 148, 151 (1969), for the principle that "the failure . . . to charge an offense is a matter of jurisdiction . . . ." In that case we were perhaps guilty of that frequent appellate error we noted above in too loosely applying the term "jurisdiction" under the assumption that a reader was cognizant of the definitional nuances. We declared that maxim in *Baker* only within the context of Md. Rule 1085 assuring review of jurisdictional issues.

> ". . . Where jurisdiction cannot be conferred on the Court by waiver or consent of the parties, a question as to the jurisdiction of the lower court may be raised and decided in this Court whether or not raised and decided in the lower court." (Emphasis added).

Rule 1085 augments the assurance that real jurisdictional defects will not be lost by procedural oversight and helps fill the vacuum left by the decaying purpose for writs of certiorari.

The jurisdictional distinctions alluded to by Chief Judges McSherry's and Boyd's Gongorisms for purposes of using writs of certiorari, have reached contemporary clarification in an increasingly limited perspective pointing out step by step that the distinctive uses of the term "jurisdiction" should be carefully restrained by appellate courts. Initially acknowledged in *Block v. State,* 286 Md. 266, 270 (1979), but more explicitly explicated in *Pulley v. State, supra,* the Court of Appeals had begun the slow task of focusing more clearly upon the obscured nuances previously lost in loose language.

"Since the word 'jurisdiction' encompasses different meanings depending upon the context in which it is being used, we note that as applied to courts, unless otherwise modified, it 'is a term of large and comprehensive import and embraces every kind of judicial action.' *Landis v. City of Roseburg,* 243 Ore. 44, 411 P.2d 282, 285 (1966) (en banc). Thus, it may, but does not necessarily always, refer to the 'fundamental jurisdiction' of a court, i.e., 'the power residing in [a] court to determine judicially a given action, controversy, or question presented to it for decision.' *Fooks' Executors v. Ghingher,* 172 Md. 612, 621, 192 A. 782, 786, *cert. denied subnom, Phillips v. Ghingher,* 302 U.S. 726 (1937). *Accord, Urciolo v. State,* 272 Md. 607, 616, 325 A.2d 878, 884 (1974) ('the power to inquire into the facts, to apply the law and to declare the punishment for an offense'); *Moore v. McAllister,* 216 Md. 497, 507, 141 A.2d 176, 182 (1958) ('power of a court to render a valid decree'). For a fuller discussion of this concept see *First Federated Com. Tr. v. Comm'r,* 272 Md. 329, 333-35, 322 A.2d 539, 542-43 (1974). 'Fundamental jurisdiction,' as we now use that term, is the power to act with regard to a subject matter which 'is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred.' *Cooper v. Reynolds' Lessee,* 77 U.S. (10 Wall.) 308, 316, 19 L.Ed. 931 (1870). 'If by that law which defines the authority of the court, a judicial body is given the *power* to render a judgment over that class of cases within which a particular one falls, then its action cannot be assailed for want of subject matter jurisdiction.' *First Federated Com. Tr. v. Comm'r, supra,* 272 Md. at 335, 322 A.2d at 543. Thus, any action taken by a court while it lacks 'fundamental jurisdiction' is a nullity, for to act without such jurisdiction is not to act at all. *See, e.g., Fisher, Admrx. v. Demarr,* 226

Md. 509, 515, 174 A.2d 345, 348 (1961); *Fooks'*
*Executor v. Ghingher, supra,* 172 Md. at 619, 192 A.
at 785; *Wickes v. Caulk,* 5 H. & J. 36, 42 (1820). For
a recent discussion of 'fundamental jurisdiction' in
the double jeopardy context, see *Parks v. State,* 287
Md. 11, 17-18, 410 A.2d 597, 601-02 (1980); *Block v.*
*State,* 286 Md. 266, 270-73, 407 A.2d 320, 322-24
(1979)." *Pulley v. State,* 287 Md. at 415-416.

In the present case the District Court had "fundamental
jurisdiction" over the subject matter of drunken driving
which included the offense convicted by virtue of Md.
Transp. Code Ann. § 26-405 at the time the judgment was
rendered. Whether the judgment was properly rendered (*i.e.,*
whether the obvious jurisdiction was properly exercised), is
a factual question depending upon the purpose and effect of
the amendment permitted at the commencement of the case.
The cases make it clear that an improper or defective
exercise of jurisdiction does not permit the judicial
proceedings to be treated as a nullity. *Block, supra* at 270,
273-274; *Parks, supra* at 18; *Hendrick, supra; Crichton,*
*supra.* The appellant is wrong on both jurisdictional
contentions for the same reason: the writ was not improperly
denied and the District Court proceeding was not a nullity.

*Judgment affirmed.*
*Costs to be paid by appellant.*