896 A.2d 1006

**In the Matter of the APPLICATION OF Robert J. KIMMER for Admission to the Bar of Maryland.**

**Misc. No. 12, Sept. Term, 2005.**

Court of Appeals of Maryland.

April 17, 2006.

252

Byron L. Warnken, (Warnken, LLC), Baltimore, for appellant.

Paul D. Raschke, Asst. Atty. Gen., for appellee.

Argued before BELL, C.J., WILNER, CATHELL, HARRELL, BATTAGLIA, GREENE and JOHN C. ELDRIDGE, (Retired, Specially assigned), JJ.

BELL, C.J.

The issue presented by the application of Robert Kimmer, the applicant, for admission to the bar of Maryland and the exceptions thereto, filed by the Board of Law Examiners, the Board, is whether a circuit court has jurisdiction [1] over bar

---

1. In analyzing the Circuit Court's jurisdiction over bar admission matters, we use the term "jurisdiction" fundamentally, to indicate the actual power, rather than the propriety, of the Circuit Court acting in such matters. We discussed this issue in *Maryland Bd. of Nursing v. Nechay,* 347 Md. 396, 405–406, 701 A.2d 405, 410 (1997). There, we observed, as we previously had done in *Moore v. McAllister,* 216 Md. 497, 507, 141 A.2d 176, 182 (1958), and long had recognized, that "[j]uridically, jurisdiction refers to two quite distinct concepts: (i) the power of a court to render a valid decree, and (ii) the propriety of granting the relief sought." (Citing 1 Pomeroy, Equity Jurisprudence (5th ed.1941), §§ 129–31). *See First Federated Commodity Trust Corp. v. Commissioner of Securities for Maryland,* 272 Md. 329, 334, 322 A.2d 539, 543 (1974). Noting·that the former concept involves jurisdiction in its fundamental sense, *Nechay,* 347 Md. at 405–406, 701 A.2d at 410, citing *McAllister,* 216 Md. at 507, 141 A.2d at 182, we offered the explication of the concept set out in *Kaouris v. Kaouris,* 324 Md. 687, 708–709, 598 A.2d 1193, 1203 (1991):

"Whether a court has fundamental jurisdiction, i.e., the power, to decide a matter, must be determined by looking to 'the applicable constitutional and statutory pronouncements,' *First Federated Com. Tr.,* 272 Md. at 335, 322 A.2d at 543, because fundamental jurisdiction involves the power, or authority, of a court to render a valid final judgment. *Stewart v. State,* 287 Md. 524, 526, 413 A.2d 1337, 1338 (1980). It is a court's 'power to act with regard to a subject matter ... "conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authorities specially conferred.' " *Pulley v. State,* 287 Md. 406, 416, 412 A.2d 1244, 1249 (1980), quoting *Cooper v. Reynolds' Lessee,* 77 U.S. (10 Wall), 308, 316, 19 L.Ed. 931 (1870). *See First Federated Com. Tr.,* 272 Md. at 335, 322 A.2d at 543 ('If by that law which defines the authority of the court, a judicial body is given the power

admission matters such that, having determined that an applicant to take the bar examination is entitled, when taking the examination, to accommodation, pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. §§ 12101 *et. seq.*, it may order the Board to provide such accommodation. The Circuit Court for Anne Arundel County, ruling on the applicant's *Petition for Preliminary Injunction and/or Temporary Restraining Order*, determined that the ADA applied and that the applicant was entitled to the accommodation he sought. Accordingly, it granted the applicant's request for a temporary restraining order and ordered the Board to provide "ADA accommodations," as specified.[2] We shall hold that

---

to render a judgment over that class of cases within which a particular one falls, then its action cannot be assailed for want of subject matter jurisdiction.'); *Medical Examiners v. Steward*, 207 Md. 108, 111, 113 A.2d 426, 427 (1955) (Fundamental jurisdiction exists when the court has jurisdiction over the subject matter and the parties.); *Moore v. McAllister*, 216 Md. at 507–08, 141 A.2d at 182 ('[J]urisdiction over the person and the subject matter goes to the very basic *power* of the equity court.' (Emphasis in the original)").
*Nechay*, 347 Md. at 405–406, 701 A.2d at 410. *See* also *New York Min. Co. v. Midland Min. Co.*, 99 Md. 506, 58 A. 217, 220 (1904); *Vonoppenfeld v. State*, 53 Md.App. 462, 469–470, 454 A.2d 402, 406–407 (1983).

**2.** The court's Order was as follows:

"It is hereby ORDERED, in the above-referenced case [*Kimmer v. State Board of Law Examiners*], on this 25th day of July, 2005, that:
"(1) Plaintiff's request for a Temporary Restraining Order is GRANTED; and it is further ORDERED that
"(2) Defendant shall provide Plaintiff with ADA accommodations for the July 2005 Maryland essay exam and multistate multiple-choice exam in the same manner that Defendant accommodates other bar candidates granted ADA accommodations related to time and/or equipment, which, in Plaintiff's case, is (a) double time for both portions of the exam, and (b) the use of a computer for the essay portion of the exam, with Plaintiff's bar exam to be administered over a four-day period, commencing on July 25, 2005, and concluding on July 29, 2005, with two days for the Maryland essay portion and two days for the multistate multiple-choice portion; and it is further ORDERED that
"(3) Plaintiff shall cooperate with Defendant in terms of times, location, and equipment in the same manner as other bar candidates with ADA accommodations.
"(4) This Order will expire in ten (10) days from the date of this Order."

authority over the bar admission process is solely within the jurisdiction of this Court.

## I.

The applicant was not diagnosed with, and appears not to have sought evaluation for, a learning disability until just prior to entering law school in 2002, after he had taken the Law School Aptitude Test ("LSAT"). He had previously taken the Scholastic Aptitude Test ("SAT"), entered Emory University, completed his Bachelor's Degree at that University with a 3.7 Grade Point Average, and taken the LSAT, all without disability accommodation. His dissatisfaction with his LSAT score prompted him to obtain an evaluation to determine if he had learning disabilities.

The psychologist he consulted, Dr. Anne Wake, after testing the applicant over four days, concluded that he has a specific processing learning disability, diagnosis 315.9 in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM–IV"). On the strength of that diagnosis and consistent with Dr. Wake's recommendation, he was given accommodation, typically amounting to double time and the use of a computer,[3] throughout law school, at both the University of Baltimore Law School and the George Washington University School of Law.[4]

---

The petition was not accompanied by a complaint. Moreover, after obtaining the temporary restraining order, the applicant did not pursue obtaining a permanent injunction or seek adjudication on the merits. In fact, the applicant took no further action in the case after the order was issued until after expiration of the temporary restraining order, even though he was placed on notice, prior to its expiration, that the Board did not intend to recommend the applicant's admission to the bar even if he passed the examination, without adjudication of the merits of the applicant's entitlement to the accommodations he received. Thus, other than a subsequent order setting for hearing his later filed *Petition for Declaratory Relief*, this is the final and only order in the case.

3. Dr. Wake recommended that the computer be equipped with grammar check and spell check.

4. The applicant attended the University of Baltimore School of Law for his first year of law school and then he transferred to the George

On May 15, 2005, the applicant wrote to the Board of Law Examiners requesting ADA accommodation when he sat for the July 2005 Maryland bar examination.[5] He included in his letter reports from his psychologist, as well as letters from both of the law schools he had attended, the latter of which indicated that he had received such accommodations throughout his law school career. The applicant specifically asked that he be given double time to complete the examination and that he be permitted to use a word processing computer in doing so. The Board, consistent with its customary practice and its Rules, *see* Rule 3 d. of the Rules of the Maryland State Board of Law Examiners,[6] forwarded the reports and the letters to its expert psychologist for review. On this occasion, the material was sent to Dr. Lawrence Lewandowski,

The Board's psychologist concluded, on the documentary record,[7] that the applicant had not demonstrated a disability

---

Washington School of Law, from which he obtained his Juris Doctor degree.

5. Rule 3 of the Maryland Rules of the State Board of Law Examiners addresses Accommodations Pursuant to the Americans With Disability Act. Subsection b prescribes the procedure for making a request for accommodation. It requires a submission on the "Applicant's Accommodations Request Form," contained in the bar application form, along with the specified supporting documentation. No issue is raised as to the failure of the applicant to comply with the Rule, although in clarifying its ruling in response to the applicant's inquiry, the Board brought to the applicant's attention the need to complete the prescribed form and the manner in which its prior submission was deficient. The applicant's expert thereafter supplemented her reports, presumably with the required documentation.

6. As relevant, that Rule provides:
 "d. *Board Determination.* If there is uncertainty about whether the requested test accommodations are warranted pursuant to the ADA, the applicant's request and all supporting documentation shall be referred to a qualified expert retained by the Board to review and analyze whether the applicant has documented a disability and requested reasonable accommodations...."

7. Dr. Lewandowski was asked to review the documentation submitted by the applicant in support of his application for ADA accommodation. That documentation included his request form, his personal statement, letters of prior accommodation from the law schools he attended and

covered by the ADA and, therefore, was not entitled to accommodation.[8] He consequently recommended that the applicant not be given accommodation. Based on that recommendation, on June 20, 2005, the Board denied the applicant's request for ADA accommodation. The reasons for the decision were amplified by its subsequent letter, dated June 21, 2005, responding to a further inquiry from the applicant for a fuller explanation of its decision. In that letter, the Board advised the applicant, as it had been informed by Dr. Lewandowski, that he did not meet the criteria for either a DSM–IV diagnosis of a learning disorder or as a qualified person under the ADA, explaining that he had demonstrated above average performance in "virtually every dimension of cognitive and academic functioning" and that "[b]ecause a test score is not as high as a superior IQ score, does not mean it is a deficit or impairment."[9] In addition, the Board invited the submission of "additional documentation," by way of "an appeal," to be filed with its Chair, within ten days.

---

the psychological report and letter from the applicant's psychologist, Dr. Wake.

8. Noting the applicant's educational background and after a review of his performance on the tests administered by Dr. Wake, Dr. Lewandowski concluded:

"Analysis of the limited documentation in this case suggests that Mr. Kimmer does not meet criteria for a DSM IV diagnosis of Learning Disorder, nor does he meet criteria as a qualified individual under the ADA. Mr. Kimmer's history and test scores indicate that he performs well above the average person on virtually every dimension of cognitive and academic functioning. There is no evidence of significant impairment or a substantial limitation in learning. Just because every test score is not as high as his superior IQ score does not mean that those scores (i.e., 120) should be considered as impaired or deficits."

9. The Board also advised the applicant that "[t]he report sent was deficient in that it did not follow the General Guidelines for All Evaluation Reports," not having included the qualifications of the diagnostician, an explanation of how the examination performance is impaired, an explanation for why there were no accommodations given before the date of the report and why they are necessary now. The guidelines were attached to the letter. Dr. Wake responded to this letter, providing the required information, by letter dated June 27, 2005.

On July 1, 2005, the applicant, through counsel, filed, by letter, *Appeal of Denial of Request for Bar Exam Accommodation for Robert Kimmer*,[10] with the Board's Chair. Arguing that he was evaluated by a highly-credentialed expert in learning disabilities, that he has a learning disability, as demonstrated by the professional testing performed by that expert, and that his disability "substantially limits the major life activities of reading, writing ... [and] working, and [that he] has the proficiency and intellect required to practice law," the applicant concluded that he thus required and was entitled to accommodation. Moreover, the applicant asserted, professional examinations, such as bar examinations, fall under the purview of the ADA.

This "appeal," along with a supplemental letter from Dr. Wake addressing the deficiencies the Board identified in the applicant's submission seeking accommodation, were referred to Dr. Lewandowski for review. Finding that nothing new had been presented, Dr. Lewandowski's recommendation did not change. Based on that assessment and the Chair's review of all documentation, the Board, on July 21, 2005,[11] denied the "appeal," concluding "that there is no justification for granting the accommodations requested and they are therefore denied."

On July 22, 2005, four days before the bar examination he intended to sit for was to be administered, the applicant filed, in the Circuit Court for Anne Arundel County, a *Petition for*

---

**10.** Rule 3 e. of the Rules of the Maryland State Board of Law Examiners provides for appeal of an adverse ruling. It provides:

"e. *Appeal.* An applicant shall file any appeal with the Board within 10 days of the date of the Board's letter denying test accommodations. The appeal shall be in the form of a letter addressed to the Board at the Board's administrative office and shall contain any additional information or documentation the applicant wishes to have considered. The Chairman of the State Board of Law Examiners is delegated the authority to decide appeals on behalf of the Board. The Board's staff will advise the applicant by letter of the results of the appeal."

**11.** On July 13, 2005, when the Board had not yet made a determination regarding the appeal, the applicant's attorney called the Board and asked when an answer was anticipated, as the bar exam the applicant planned to take was scheduled for July 26 and 27.

*Preliminary Injunction and/or Temporary Restraining Order* to enjoin the State Board of Law Examiners "from denying ADA accommodations to [the applicant] on the July 2005 Maryland and multistate bar exam in the form of double time and the use of a computer on the essay exam." He argued in the petition, as he had similarly argued to the Board, that he suffers from a learning disability which substantially limits major life activities, namely reading, writing, and working, that he is thus impaired in his ability to compete with his peers on time restricted examinations, and that the failure of the Board to give him ADA accommodations as requested deprives him of his right to work in his chosen profession. Further, he urged that, because he was planning to take the July 26 and 27 bar examination, it was imperative that the Court quickly order that such accommodations be given.

 Following a hearing held on the same day,[12] the trial court ordered the requested injunctive relief, namely, a temporary restraining order requiring that the applicant have the use of a computer for the essay portion of the examination and double time in which to take it and the multistate examination. It concluded that the applicant would likely be successful on the merits of the case, that the likelihood of prejudice regarding other examination takers was outweighed by the applicant's hardship, that the applicant would likely suffer irreparable harm if he was not accommodated and failed the examination, that the accommodations would be easy for the Board to make, and that public policy favored giving accommodations to those with ADA recognized disabilities.[13]

---

**12.** July 22, 2005 was a Friday. The Board was offered the opportunity to postpone the hearing until July 25, 2005, but opted to go forward on the 22nd, inasmuch as nothing was to be gained by the postponement.

**13.** In determining whether to issue a temporary restraining order, the trial court must examine and find four factors: "(1) the likelihood that the plaintiff will succeed on the merits; (2) the 'balance of convenience' determined by whether greater injury would be done to the defendant

The Board fully complied with the court's order and provided the ordered accommodation for the applicant during the July 2005 examination. Subsequently, however, by letter dated August 2, 2005, long before the examination had been graded and two days before the expiration of the temporary restraining order, it informed the applicant, through counsel, that it was "maintain[ing] its position that [he] has not established that he is entitled, under the Americans with Disabilities Act, to the accommodations he received for the July 2005 Maryland bar examination." The Board also advised the applicant that, although it would grade his examination anonymously with the other examinees, it would not recommend his admission to the bar of Maryland, even if he passed the examination, "prior to an adjudication on the merits of his entitlement to accommodations for taking the Maryland bar examination."

In response, on September 29, 2005,[14] the applicant filed a *Motion for Declaratory Relief.* Filed in the same case from which the temporary restraining order was issued, he, in effect, asked the Circuit Court to make the temporary restraining order it had issued on July 22 permanent and, further, for a ruling that the applicant be admitted to the Maryland Bar. In that regard, the applicant argued that the granting of the temporary restraining order would have been otherwise meaningless; in issuing the order, the court also

by granting the injunction than would result from its refusal; (3) whether the plaintiff will suffer irreparable injury unless the injunction is granted; and (4) the public interest." *LeJeune v. Coin Acceptors, Inc.,* 381 Md. 288, 300–301, 849 A.2d 451, 458–59 (2004); *Fogle v. H & G Restaurant, Inc.,* 337 Md. 441, 654 A.2d 449 (1995): *Lerner v. Lerner,* 306 Md. 771, 776, 511 A.2d 501, 504 (1986); *State Dep't of Health and Mental Hygiene v. Baltimore County,* 281 Md. 548, 554, 383 A.2d 51, 55 (1977). Md. Rule 15–501(b) defines "preliminary injunction" as "an injunction granted after opportunity for a full adversary hearing on the propriety of its issuance but before a final determination of the merits of the action."

14. In its brief, the Board says that the Motion was filed October 3. The certificate of service contains the date September 29 and that is the date that the docket entries indicate that the Motion was filed.

must have intended that the Board recommend the applicant's admission upon his successful passing of the bar examination.

The Board timely opposed this motion. Noting that the motion was filed two months after both the expiration of the temporary restraining order and receipt of the Board's letter informing the applicant of its intention not to recommend the applicant's admission and, thus, characterizing it as "improperly seek[ing] to revive and extend the parameters of a long-expired temporary restraining order, contrary to the Rules, and to transmute it into permanent injunctive relief," the Board submitted that, "[a]s the filing is unsupported by a proper complaint, it is plainly defective and [the Circuit] Court lacks jurisdiction to act on it. It must be stricken."

On November 4, 2005, as required by Rule 10(a) of the Rules Governing Admission to the Bar of Maryland,[15] the Board of Law Examiners reported the results of the July 2005 bar examination to the Court of Appeals, along with its recommendations for admission. The applicant was listed as having passed the examination. On the same date, pursuant to Rule 10(b),[16] this Court passed an order setting December

---

**15.** Rule 10(a) of the Rules Governing Admission to the Bar of Maryland provides:

"(a) *Report and recommendations as to candidates.* As soon as practicable after each examination, the Board shall file with the Court a report of the names of the successful candidates and the Board's recommendation for admission. If proceedings as to the character of a candidate are pending, the Board's recommendation of that candidate shall be conditioned on the outcome of the proceedings."

**16.** "(b) *Order of ratification.* On receipt of the Board's report, the Court shall enter an order fixing a date at least 30 days after the filing of the report for ratification of the Board's recommendations. The order shall include the names and addresses of all persons who are recommended for admission, including those who are conditionally recommended. The order shall state generally that all recommendations are conditioned on character approval, but shall not identify those persons as to whom proceedings are still pending. The order shall be published in the Maryland Register at least once before ratification of the Board's recommendations."

Ratification of board's report occurred "[o]n expiration of the time fixed in the order ... subject to the conditions state in the recommen-

5, 2005 as the date on which, in the absence of the filing of exceptions to any applicant, the Board's recommendation would be ratified, and, pursuant to Rule 10(c),[17] the Board filed its exceptions to the applicant's admission.

Thereafter, by letter to the Court, dated November 17, 2005, the Board asked the Court to set the matter of its exception to the admission of the applicant in for a hearing, pursuant to Rule 10(c). It perceived the "discrete issue before the Court [to be] whether [the applicant] is entitled to admission when he has not sought, nor obtained, an adjudication on the merits of his ADA claim." Accordingly, the Board offered in support of its request that "[t]he qualification of an applicant for admission to the Bar is a matter which rests peculiarly within the jurisdiction of this Court." On December 2, 2005, this Court ordered that any proceedings in the Circuit Court for Anne Arundel County regarding the applicant's bar examination and admission be stayed, and scheduled the case for a hearing on the Board's exceptions and on the issue of the Circuit Court's jurisdiction over bar admission matters.

## II.

The regulation of the practice of law, including the regulation of the admissions to the bar, long has been, *see* Act

---

dations and to any exceptions noted under section (c) of this Rule." Rule 10(d).

17. "(c) *Exceptions.* Before ratification of the Board's report, any person may file with the Court exceptions relating to any relevant matter. For good cause shown the Court may permit the filing of exceptions after ratification of the Board's report and before the candidate's admission to the Bar. The Court shall give notice of the filing of exceptions to the candidate, the Board, and the Character Committee that passed on the candidate's application. A hearing on the exceptions shall be held to allow the exceptant and candidate to present evidence in support of or in opposition to the exceptions and the Board and Character Committee to be heard. The Court may hold the hearing or may refer the exceptions to the Board, the Character Committee, or an examiner for hearing. The Board, Character Committee, or examiner hearing the exceptions shall file with the Court, as soon as practicable after the hearing, a report of the proceedings. The Court may decide the exceptions without further hearing."

of April, 1715, ch. 48, §§ 12, 13 (Maxcy ed., vol. 1, p. 132 (1811)),[18] and is now, a judicial function. *Post v. Bregman* 349 Md. 142, 162–63, 707 A.2d 806, 816 (1998); *Attorney General v. Waldron*, 289 Md. 683, 692, 426 A.2d 929, 935 (1981); *Maryland State Bar Ass'n v. Boone*, 255 Md. 420, 258 A.2d 438 (1969); *Pub. Service Comm'n of Maryland v. Hahn Transportation*, 253 Md. 571, 583, 253 A.2d 845, 852 (1969) ("Under our constitutional system of separation of powers, the determination of what constitutes the practice of law and the regulation of the practice and of its practitioners is, and essentially and appropriately should be a function of the judicial branch of the government."). This point was made most forcefully and completely in *Waldron*, where we explained:

"Cognizant of the constitutionally imposed responsibility with respect to the administration of justice in this State, this Court has heretofore recognized and held that the regulation of the practice of law, the admittance of new members to the bar, and the discipline of attorneys who fail to conform to the established standards governing their professional conduct are essentially judicial in nature and, accordingly, are encompassed in the constitutional grant of judicial authority to the courts of this State.... Thus, in *[Public Serv. Comm'n v.] Hahn [Transp., Inc.]*, 253 Md. [571,] 583, 253 A.2d [845,] 852 [1969], Chief Judge Hammond stated for this Court that '(u)nder our constitutional system of separation of powers, the determination of what consti-

---

18. That Act provided:

"AND BE IT FURTHER ENACTED, *by the authority advice and consent aforesaid,* That from and after the end of this present session of assembly, no attorney, or other person whatsoever, shall practise the law in any of the courts of this province, without being admitted thereto by the justices of the several courts, who are hereby empowered to admit and suspend them (*salvo jure coronae* ) until his majesty's pleasure shall be known therein ... PROVIDED ALWAYS, That nothing in this act shall extend, or be construed to extend, to give right to any courts of this province to admit any attorney, or other person practising the law, to practise in any court that has been already refused so to do by his excellency, and his majesty's honourable council...."

tutes the practice of law and the regulation of the practice and of its practitioners is, and essentially and appropriately should be, a function of the judicial branch of government.' A short time later, this Court determined, *inter alia*, that the following words of the Supreme Judicial Court of Massachusetts are 'highly persuasive':

"It is a necessary implication from the exclusive jurisdiction of the judicial department of control of membership in the bar that the judicial department is not restricted in the (manner) of review in such proceedings to methods prescribed by statute. If this were not true the judicial department would be restricted by legislative action in the performance of its duties with respect to membership in the bar of which it has 'exclusive cognizance.' " (*Maryland State Bar Ass'n v. Boone,* 255 Md. at 431, 258 A.2d at 443.)

"The principle that the admission of attorneys to the bar as well as their supervision once admitted are by nature functions and concerns of the judicial branch of government is far from a novel concept. The history of the courts in the formative years of this nation, and indeed, the history of our ancestral English courts support the conclusion that this uniquely judicial responsibility is of ancient vintage. Even though the doctrine of separation of powers is not an integral part of the British system of government and is one whose fruition occurred on the western shores of the Atlantic, the English courts common law, chancery, admiralty and ecclesiastical have always exclusively admitted attorneys, solicitors and proctors to practice before them. Insofar as the other class of English legal practitioners is concerned, barristers traditionally were regulated by the educational societies known as the Inns of Court, which, in turn, generally are thought to have submitted to the control of judges as visitors to those bodies. All of this oversight and supervision of the English practitioners was accomplished independent of any authorization or predomination by any other department of government. *See State v. Cannon,* 206 Wis. 589[374], 240 N.W. 441, 445–48 (1932), and *In re Day,* 181

Ill. 73, 54 N.E. 646, 648–50 (1899), and citations therein, for discussions of the history of the admission and regulation of lawyers in England. *See* also Note, *Admission to the Bar and the Separation of Powers,* 7 Utah L.Rev. 82, 82–86 (1960). Similarly, there are early statements in opinions of courts of this country that declare the admission to practice to be an exercise of judicial power. *See, e. g., Ex parte Garland,* 71 U.S. (4 Wall.) 333, 18 L.Ed. 366 (1867); *Ex parte Secombe,* 60 U.S. (19 How.) 9, 15 L.Ed. 565 (1857); *In re Mosness,* 39 Wis. 509, 20 Am.Rep. 55, 56–57 (1876). *See* also 1 E. Thornton, Attorneys at Law §§ 756–61 (1914). As has been recognized by a distinguished scholar of these matters:

> "It is undoubtedly true that the power to admit one to practice as an attorney at law is a judicial function. It is a power inherent in the court, which is to be exercised by a sound judicial discretion.... Early in the national jurisprudence it was held that the power to admit and remove was the exclusive province of a federal court. And this ruling has been consistently maintained. Where a state constitution lodges the judicial power exclusively in the courts, as a coordinate department of government, (as does Maryland's by Art. IV, § 1,) the legislature will not be permitted to encroach upon the judicial powers by assuming to make admission to the bar a legislative function. (*Id.,* § 28, p. 31–32.)"

"Moreover, in more recent decades, various courts from many of our sister jurisdictions have pronounced that such authority, and the power generally to regulate matters regarding the profession and its practitioners, are reposed inherently in the judiciary....

"The statements of this and other courts announcing the obligation of the judicial branch of government to monitor and manage its own house are not hollow proclamations of power, for the placement of this responsibility with the judiciary represents a recognition of this special, and to a degree, unique relationship that has evolved over the years between the legal profession and the tribunals of justice it

serves. In this country, it is a well known maxim that attorneys function as officers of the courts, and, as such, are a necessary and important adjunct to the administration of justice. This truism necessarily derives, in our view, from the very theory of the structure of our system of justice." 289 Md. at 692–695, 426 A.2d at 935–936 (and cases therein cited).

To be sure, the judicial power of admitting attorneys to the practice of law was exercised, between 1715 and 1898, by both the county courts and this Court—initially by the county courts exclusively, William H. Adkins, II, *What Doth the Board Require of Thee?*, 28 Md. L.Rev. 103, 104 (1968); *see State v. Johnston*, 2 H. & McH. 160, 1786 WL 52, 2–3 (General Court, 1786) (refusing to grant certiorari to review the action of a lower court in admitting to practice one who had been a Tory),[19] and, later, concurrently with this Court. Adkins, 28 Md. L.Rev. at 104. The current procedures for admitting attorneys have their genesis in Ch. 139, 1898 Md. Laws, the enactment of which placed in this Court exclusive jurisdiction over admissions.[20] Chapter 139 provided:

---

**19.** A similar situation existed with regard to disciplinary actions against an attorney. *Petition of Brack*, 187 Md. 407, 408, 50 A.2d 432, 432 (1946); *In re Williams*, 180 Md. 689, 689, 23 A.2d 7, 11 (1941).

**20.** This recognition and allocation of jurisdiction is now codified in Md.Code (1989, 2004 Replacement Vol.), Title 10, Subtitles 1 and 2 of the Business Occupations and Professions Article. In *Bastian v. Watkins*, 230 Md. 325, 329, 187 A.2d 304, 306 (1963), this Court commented, in that regard: "It has long been recognized that the admission of a resident of Maryland to practice law is a legislative, not a judicial, function in that the right may constitutionally be regulated by statute." As indicated in *Attorney General v. Waldron*, 289 Md. 683, 698–699, 426 A.2d 929, 937–938 (1981), this observation was reflective of the "comfortable accommodation," *Public Service Commission v. Hahn Transp., Inc.*, 253 Md. 571, 583, 253 A.2d 845, 852 (1969), which has developed between the Judiciary and the Legislature and, despite its "constitutionally imposed responsibility" to regulate the practice of law, the admission of new members to the bar, and the discipline of attorneys, was consistent with the Court's recognition of the General Assembly's ability to "act pursuant to its police or other legitimate power to aid the courts in the performance of their judicial functions . . . and . . . [to] establish

"All applications for admission to the bar in this State shall be made by petition to the Court of Appeals. A State Board of Law Examiners is hereby created to consist of three members of the bar of at least ten years' standing, who shall be appointed by the Court of Appeals, and shall hold office for the term of three years.... All applications for admission to the bar shall be referred by the Court of Appeals to the State Board of Law Examiners, who shall examine the applicant, touching his qualifications for admission to the bar. The said board shall report their proceedings in the examination of applicants to the Court of Appeals with any recommendations said board may desire to make. If the Court of Appeals shall then find the applicant to be qualified to discharge the duties of an attorney, and to

---

minimum criteria for the learning and character of persons admitted to the bar of this State." We were clear, however, that

"There can be no doubt ... that the deferential respect accorded the legislative branch by the judicial must neither undermine nor dilute the fundamental authority and responsibility vested in the judiciary to carry out its constitutionally required function, an aspect of which, as we have seen, is the supervision of practicing attorneys,"

and that

"since admission to the bar is a judicial function, the Legislature may not prescribe the maximum qualifications necessary for admittance, for this Court is always free to adopt any additional requirements it deems necessary to maintain a high level of professional competence in the bar and promote public trust in and respect for the profession."

Thus, the Judiciary's responsibility and obligation with regard to the practice and admission process are recognized throughout the statute. Section 10–103 provides for the Court to "adopt rules that govern the standards and procedures for admission to the Bar." Section 10–206 provides:

"(a) Except as otherwise provided by law, before an individual may practice law in the State, the individual shall:

"(1) be admitted to the Bar; and

"(2) meet any requirement that the Court of Appeals may set by rule."

Section 10–207(f) prescribes that, to qualify for admission to the bar, in addition to the statutory provisions, "[a]n applicant shall meet any other qualification or requirement that the Court of Appeals establishes by rule."

Moreover, the Rules Governing Admission to the Bar of Maryland are comprehensive.

be of good moral character and worthy to be admitted, they shall pass an order admitting him to practice in all the courts of the State."

 Therefore, it has been clear, since 1898, that the Court of Appeals has had exclusive jurisdiction over the regulation of, and admission to, the practice of law. *See Bastian v. Watkins*, 230 Md. 325, 329, 187 A.2d 304, 306 (1963) ("[I]n 1898, following a definite trend toward uniformity that apparently began as early as 1831, the Court of Appeals of Maryland was vested with exclusive power to admit applicants to practice law."); *Maryland State Bar Ass'n v. Boone*, 255 Md. 420, 430, 258 A.2d 438, 443 (1969) ("Since the passage of Ch. 139 of the Laws of 1898 . . . the Court of Appeals in the exercise of its inherent and fundamental judicial powers has supervised, regulated and controlled the admission of lawyers."); *Application of Allan S.*, 282 Md. 683, 689, 387 A.2d 271, 275 (1978) ("Upon this Court falls the primary and ultimate responsibility for regulating the practice of law and the conduct and admission of attorneys in this State."); *In the Matter of the Application of William H. Hyland*, 339 Md. 521, 534, 663 A.2d 1309, 1315 (1995). It follows that the Circuit Court for Anne Arundel County simply had no jurisdiction over any aspect of the applicant's bar admission, including the circumstances surrounding his bar examination.

## III.

Despite the foregoing and its clarity on the question of this Court's exclusive jurisdiction, the applicant nevertheless argues, on this appeal:

"Although the Court's order could only have meant that the Board (1) administer the bar exam, (2) anonymously grade the bar exam, and (3) if Mr. Kimmer passed the anonymously graded bar exam, report the results to this Court in the same manner that it would for any other successful candidate, the Board refused to report the favorable results

unless Mr. Kimmer obtained another court order,[21] in a separate hearing on the merits, ruling that he was entitled to ADA accommodations, even though, under the Circuit Court's order, Mr. Kimmer's July 2005 exam, as administered, would forever be his only July 2005 exam."

Notwithstanding the implications of this argument, the applicant denies that he has sought, or is seeking, "to have the trial court direct his admission to the bar." Rather, he says, he merely used appropriate legal process to obtain "valid enforcement of his federal ADA rights," *i.e.* injunctive relief. Moreover, he asserts that, because the ADA preempts state and local law to the contrary, it "controls" even in cases of bar licensure, which the applicant concedes is an issue for this Court. Further, the applicant notes, and emphasizes, that state courts, and consequently Maryland circuit courts, have concurrent jurisdiction with the federal judiciary over ADA claims. The applicant thus concludes:

"Merely because Mr. Kimmer's ADA issue arises in the context of the bar exam does not place it outside the statutory jurisdiction of the Circuit Court. No one would suggest that an applicant for a CPA exam or a medical board certification would litigate the denial of ADA accommodations before accountant or medical licensure bodies, simply because they, like this Court, ultimately control the licensure process of their profession." [22]

---

**21.** This is not correct. The Board did report the applicant's favorable results to the Court, but then filed an exception to his admission, as it was permitted by Rule 10(c) to do.

It also is worth remembering that the trial court's ruling was a temporary ruling and was only intended to be as much. The order contained a provision making this fact crystal clear; by its terms, the temporary restraining order would expire in ten days from the date of the order. Tellingly, it was the trial judge herself who penciled in that provision. Moreover, the propriety of issuing the temporary restraining order was a contested issue, and its resolution on a temporary basis did not, as the Board's letter of August 2, 2005 made amply clear, amount to its resolution on a permanent basis. Certainly, the Board did not acquiesce in the decision.

**22.** We are not persuaded. This Court acts both legislatively and judicially. We act legislatively when we promulgate rules of procedure and

Notwithstanding the applicant's protestations to the contrary, the thrust of his argument is that the trial court's preliminary ruling is dispositive, and not only of the ADA accommodation question, but also of the Board's obligation not simply to report the applicant's favorable results but, as it would do in the case of a person taking the examination without accommodation, to recommend his admission to the bar. That is necessarily the case when the effect of other actions that must be taken subsequent to the court's temporary ruling necessarily must be informed by, and conform to, what the court must have meant when it made the ruling, whether or not the issue driving the ruling was contested. The implications of adopting that argument in this context are clear; at least with regard to applicants to the bar who claim to have disabilities covered by the ADA, the circuit courts will have concurrent jurisdiction with this Court with regard to their bar admission. While the regulation of the practice of law, including the admission to the bar, was at one time a shared responsibility between the county courts and the General Court and then, later, between the county courts and this Court, that no longer is the case. We decline to retreat to that earlier time.

Sidestepping the historical basis of this Court's exclusive jurisdiction over bar admission matters, the applicant attempts to argue that concurrent jurisdiction between this Court and the circuit courts is necessary in instances where

practice, *i.e.*, the Maryland Rules of Practice and Procedure, or to regulate the profession, *i.e.*, the Rules Governing Admission to the Bar of Maryland. The source of our legislative power is the Maryland Constitution, Md. Const Art. IV, § 18(a), and the separation of powers doctrine, Md. Const, Declaration of Rights, Art. 8. Thus, we have, by rule, *see* Rule 3 of the Rules of the Maryland State Board of Law Examiners, required applicants to present their bar admission-related ADA claims to the Board of Law Examiners for consideration and decision and thus, ultimately, to this Court. Adjudication of this case is pursuant to this Court's constitutional responsibility and jurisdiction, as the highest Court in this state, to regulate the practice and oversee admissions to the bar. The comparison of our process to a professional licensure board's hearing of an ADA claim is, consequently, and to say the least, inappropriate and inapposite.

immediate relief, which, presumably, only the circuit courts are equipped to grant, is required. Of course, he believes his case is one of these instances; his reasoning is that, because he submitted his request for accommodations to the Board well within the Board's own deadline, and because he followed each action by the Board with speedy action of his own, the fact that he still had an unfavorable outcome four days before the bar examination for which he planned to sit required that, to obtain the ADA accommodations he sought, he had to seek immediate injunctive relief through the Circuit Court.

The premise on which this argument proceeds is faulty. Neither this applicant nor any other has the right to take a particular bar examination at a particular time, nor to be admitted to the bar at any particular time. That the Board of Law Examiners took longer than the applicant would have liked to render its final decision does not mean that it acted unreasonably or placed the applicant in a situation which could be remedied only by obtaining injunctive relief from the Circuit Court. With respect to the July bar examination, the applicant had two choices: he could have taken the examination unaccommodated, or he could have postponed taking the examination to pursue, through the administrative process, the accommodation to which he believed he was entitled. To be sure, the applicant, without accommodation, may have failed the bar examination had he taken it, or he may have had to delay taking the examination. That, however, is irrelevant to our analysis and to the procedures prescribed by this Court in bar admission matters. There simply is no such immediate need present in bar admission matters such that circuit court jurisdiction is required.

 Further, that our own jurisdictional rules require the applicant to bring his bar admission-related ADA claim to the Board and this Court rather than to any other state court does not contradict the ADA and its preemption provisions, contrary to the applicant's arguments. The applicant is correct in that cases arising under the ADA may be heard in either federal or state courts, *Yellow Freight System, Inc. v. Donnel-*

*ly,* 494 U.S. 820, 823, 110 S.Ct. 1566, 1568, 108 L.Ed.2d 834, 839 (1990); *R.A. Ponte Architects v. Investors' Alert, Inc.,* 382 Md. 689, 715, 857 A.2d 1, 16 (2004); 28 U.S.C. § 1331 (2006), and rules which would outrightly prohibit such claims, or their adjudication, are preempted. *Pacific Gas & Electric Co. v. State Energy Resources Conser. & Dev. Comm'n,* 461 U.S. 190, 203–204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752, 765 (1983). The ADA does not mandate specific state court procedures by which a plaintiff must be heard, however. *Ware v. Wyoming Board of Law Examiners,* 973 F.Supp. 1339, 1353 (D.Wy.1997) ("The ADA does not completely preempt or displace a state's procedure for licensing attorneys, rather 'the ADA merely prohibits states from discriminating on the basis of disability.' "). Federal preemption of state laws occurs only to the extent to which there is a conflict between the state court procedure and the ADA. *Pacific Gas and Electric Co. v. State Energy Resources Conser. & Dev. Comm'n,* 461 U.S. 190, 203–204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752, 765 (1983). Therefore, that our rules require the applicant to present his ADA accommodation entitlement claim to the Board of Law Examiners for determination, with the ultimate resolution being entrusted to this Court, and not to any other state court, does not violate the ADA. The applicant's opportunity to be heard, albeit through procedures which differ from those that govern ADA claims which do not arise in the bar admission context, is nevertheless preserved.

It should be noted that similar conclusions have been reached by other courts. In *Varad v. Barshak,* 261 F.Supp.2d 47 (D.Mass.2003), plaintiff/applicant orally requested ADA accommodations during the bar examination from a member of the Massachusetts Board of Bar Examiners ("BBE"), but did not make that request in writing or within seventy-five days prior to the bar examination, as the BBE required. *Id.* at 55. Because she had failed to follow the processes dictated by the BBE, and, thus, failed to exhaust her remedies under the BBE, the Massachusetts Supreme Judicial Court refused to hear the case, to intervene, or to grant her accommodations. *Id.* at 52. The applicant sought relief from the United States

District Court for the District of Massachusetts. That court similarly denied the applicant's request, on summary judgment, because, despite having received notice of the procedures necessary to obtain accommodations, the applicant had failed to comply with them. *Id.* at 55. Thus, it was determined, if only implicitly, that the Massachusetts Board of Bar Examiners' rules and procedures for obtaining ADA accommodations did not violate the ADA or deny the applicant her right to be heard.

As our historical analysis and jurisprudence make clear, this Court, since 1898, is the only court with jurisdiction over bar admission matters. None of the applicant's arguments to the contrary has merit. The Circuit Court simply had no jurisdiction to order the injunctive relief in this case. Accordingly, the Board's exceptions are sustained.

## IV

Neither Title 10 of the Maryland Code, Business Occupations and Professions Article nor the Rules Governing Admission to the Bar of Maryland [Rules] specifically addresses procedures to be followed in a situation such as the applicant's, where an applicant seeks further review of the Board of Law Examiner's decision to deny him ADA accommodations for the bar examination. There are, however, Rules that are pertinent and, therefore, instructive.

Rules 5 [23], 10 [24], and 13 [25] of the Rules Governing Admission to the Bar of Maryland describe the general procedures by

---

**23.** "Rule 5. Character Review.

"(a) *Burden of proof.* The applicant bears the burden of proving to the Character Committee, the Board, and the Court the applicant's good moral character and fitness for the practice of law. Failure or refusal to answer fully and candidly any question set forth in the application or any relevant question asked by a member of the Character Committee, the Board, or the Court is sufficient cause for a finding that the applicant has not met this burden.

"(b) *Investigation and report of character committee.* (1) On receipt of a character questionnaire forwarded by the Board pursuant to Rule 2(d), the Character Committee shall (A) through one of its members, personally interview the applicant, (B) verify the facts stated in the

questionnaire, contact the applicant's references, and make any further investigation it finds necessary or desirable, (C) evaluate the applicant's character and fitness for the practice of law, and (D) transmit to the Board a report of its investigation and a recommendation as to the approval or denial of the application for admission.

"(2) If the Committee concludes that there may be grounds for recommending denial of the application, it shall notify the applicant and schedule a hearing. The hearing shall be conducted on the record and the applicant shall have the right to testify, to present witnesses, and to be represented by counsel. A transcript of the hearing shall be transmitted by the Committee to the Board along with the Committee's report. The Committee's report shall set forth findings of fact on which the recommendation is based and a statement supporting the conclusion. The Committee shall mail a copy of its report to the applicant, and a copy of the hearing transcript shall be furnished to the applicant upon payment of reasonable charges.

"(c) *Hearing by the board.* If the Board concludes after review of the Committee's report and the transcript that there may be grounds for recommending denial of the application, it shall promptly afford the applicant the opportunity for a hearing on the record made before the Committee. The Board shall mail a copy of its report and recommendation to the applicant and the Committee. If the Board decides to recommend denial of the application in its report to the Court, the Board shall first give the applicant an opportunity to withdraw the application. If the applicant withdraws the application, the Board shall retain the records. Otherwise, it shall transmit to the Court a report of its proceedings and a recommendation as to the approval or denial of the application together with all papers relating to the matter.

"(d) *Review by court.* (1) If the applicant elects not to withdraw the application, after the Board submits its report and adverse recommendation the Court shall require the applicant to show cause why the application should not be denied.

"(2) If the Board recommends approval of the application contrary to an adverse recommendation by the Committee, within 30 days after the filing of the Board's report the Committee may file with the Court exceptions to the Board's recommendation. The Committee shall mail copies of its exceptions to the applicant and the Board.

"(3) Proceedings in the Court under this section shall be on the records made before the Character Committee and the Board. If the Court denies the application, the Board shall retain the records.

"(e) *Continuing review.* All applicants remain subject to further Committee review and report until admitted to the Bar."

**24.** *See supra,* n.n. 15, 16, and 17.

**25.** Rule 13 provides, as relevant, and regarding out-of-state attorneys:

"(f) *Petition.* (1) The petitioner shall file with the Board a petition under oath on a form prescribed by the Board, accompanied by the fees required by the Board and the costs assessed for the character and fitness investigation and report by the National Conference of Bar Examiners.

which bar admissions are controlled. Rule 5 addresses character review. Pursuant to that Rule, an applicant's character questionnaire is submitted to the Character Committee for investigation and report. Rule 5(b)(1). If the Committee concludes that there may be a basis to recommend denial of the applicant's application, after affording the applicant the opportunity for an on-the-record hearing, at which the applicant may be represented by counsel, present witnesses, and

"(2) The petitioner shall state (A) each jurisdiction in which the petitioner has been admitted to the Bar and whether each admission was by examination, by diploma privilege or on motion; and (B) the additional facts showing that the petitioner meets the requirements of section (a) of this Rule or should be qualified under section (e) of this Rule.

"(3) The petitioner shall file with the petition the supporting data required by the Board as to the petitioner's professional experience, character, and fitness to practice law.

"(4) The petitioner shall be under a continuing obligation to report to the Board any material change in information previously furnished.
 * * * *

"(h) *Time for filing.* The petition shall be filed at least 60 days before the scheduled attorney examination that the petitioner wishes to take. On written request of the petitioner and for good cause shown, the Board may accept a petition filed after the deadline. If the Board rejects the petition, the petitioner may file an exception with the Court within five days after notice of the rejection.
 * * * *

"(j) *Action by board on petition.* The Board shall investigate the matters set forth in the petition. (1) If the Board decides that the petition should be accepted, it shall mail notice of its decision to recommend acceptance of the petition to the petitioner. (2) If the Board concludes that there may be grounds for rejecting the petition, the Board shall notify the petitioner and shall afford the petitioner an opportunity for the hearing. The hearing will not be held until after the National Conference of Bar Examiners completes its investigation of the petitioner's character and fitness to practice law and reports to the Board. The petitioner may be represented by an attorney at the hearing. Promptly after the Board makes its final decision to recommend acceptance or rejection of the petition, the Board shall mail notice of its decision to the petitioner. (3) If the Board decides to recommend rejection of the petition, it shall file with the Court a report of its decision and all papers relating to the matter.

"(k) *Exceptions.* Within 30 days after the Board mails notice of its adverse decision to the petitioner, the petitioner may file with the Court exceptions to the Board's decision. The petitioner shall mail or deliver to the Board a copy of the exceptions. The Court may hear

testify, it will transmit the transcript of the hearing, along with its report and recommendation, to the Board. Rule 5(b)(2). The Board shall also afford the applicant, as to whom it concludes there is a basis to recommend that his or her application be denied, an opportunity for a hearing, and, if it so recommends, an opportunity to withdraw the application. Rule 5(c). If the Board recommends that an applicant be denied admission or recommends admission contrary to an adverse recommendation of the Character Committee, and the Committee excepts, proceedings on the record (in the case of the former, the applicant being required to show cause and, in the case of the latter, a hearing on the Committee's exceptions) will be held in the Court of Appeals. Rule 5(d).

Rule 10 governs the report and recommendation required to be made by the Board to the Court, as to each successful applicant. Rule 10(a). This Rule permits "any person," including the Board, to take exceptions to the admission of any applicant. Rule 10(c). As we have seen, the board excepted to the applicant's admission. Rule 10(c) also provides, as relevant:

> "A hearing on the exceptions shall be held to allow the exceptant and candidate to present evidence in support of or in opposition to the exceptions and the Board and Character Committee to be heard. The Court may hold the hearing or may refer the exceptions to the Board, the Character Committee, or an examiner for hearing. The Board, Character Committee, or examiner hearing the exceptions shall file with the Court, as soon as practicable after the hearing, a report of the proceedings. The Court may decide the exceptions without further hearing."

Rule 13 describes the procedures by which out-of-state attorneys are admitted to the bar of Maryland. After receipt and investigation of an applicant's petition and supporting data, if the Board concludes that there are grounds to reject the petition, it must afford the petitioner an opportunity for a

---

the exceptions or may appoint an examiner to hear the evidence and shall afford the Board an opportunity to be heard on the exceptions."

hearing. Rule 13(j). If the Board recommends rejection, the petitioner may file exceptions with the Court of Appeals. Rule 13(k). The Court will determine whether to hear the exceptions or appoint an examiner to hear the evidence.

In analyzing each of these rules, a general process of review begins to emerge: if there is a basis for the Board to recommend denial of an applicant's application or petition, it shall afford the applicant a hearing. If the Board does recommend denial, the applicant is entitled to be heard, and the Court will issue a show cause order or the applicant may file exceptions with this Court. Except with respect to character matters, where the proceedings will be on the records made before the Character Committee and the Board, the Court will either hear the issue or designate the Board or another body or person to hear the issue. In no circumstance does the applicant remain unheard.

Similarly, the applicant here, upon receiving the Board's letter denying his "appeal," could, and perhaps should, have filed a request for a hearing with the Board. Thereafter, he could have sought review, by exceptions, in this Court.

Rather than pursue the matter of his entitlement to ADA accommodation in this Court, the applicant sought relief in the Circuit Court, thus circumventing this Court's admission procedures and, in the process, undermining this Court's exclusive jurisdiction. Were we to hold that circuit courts have jurisdiction to decide ADA, and other issues, in the bar admission context, we would be participating in the undermining of our jurisdiction; we would be relinquishing our exclusive power over bar admission matters. That exclusivity has existed unabated and unassailed since 1898. We have no intention of relinquishing it to any degree or extent. As indicated, the exceptions of the Board of Law Examiners are sustained. Accordingly, the applicant's admission to the Bar of the State of Maryland is denied.

IT IS SO ORDERED.